IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wilberto Torres-Bobe,                :
               Petitioner        :
                              :   No.  1648 C.D. 2014
           v.              :
                              :   Argued:  September 14, 2015
Unemployment Compensation    :
Board of Review,               :
               Respondent    :

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION BY
JUDGE McCULLOUGH                     FILED:  October 8, 2015

Wilberto Torres-Bobe (Claimant) petitions for review of the August 18, 2014 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision and held that Claimant is ineligible for benefits under section 402(e) of the Unemployment Compensation Law (Law)[1] because his discharge was due to willful misconduct.  Claimant argues that the Board erred or abused its discretion in interpreting the regulation at 34 Pa. Code §101.128 to conclude that compelling reasons existed to allow a witness to testify by telephone.  We affirm.

Claimant worked for American Tire & Wheel (Employer) from April 10, 2008, to January 27, 2014, at a final hourly rate of $12.85.  Employer terminated

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

Claimant's employment for conduct violating Employer's rules against harassment. The local job center determined that Claimant was eligible for benefits, and Employer appealed.

Prior to the first hearing, Employer sent an email to the Lancaster referee's office requesting permission for an Ohio-based employee and two other potential witnesses to participate by telephone. (Record Item 8, #R 7.) The office responded by email stating that the referee would grant a telephone hearing and requested the names and phone numbers of the participants. *Id.* Employer provided the names and telephone numbers of Anthony Milano and Charles (Chad) Peyton.[2] Notice of the April 15, 2014 hearing, mailed April 1, 2014, stated that Milano and Peyton would be testifying by telephone. (Record Item 9, #R 2-3.)

At the first hearing, Milano identified himself and stated that he was Employer's Human Relations and payroll manager and was calling from Reynoldsburg, Ohio. Peyton identified himself and stated that he was a contractor calling from a worksite in York. Milano clarified that Peyton was employed by a third-party vendor that repairs Employer's equipment. (Notes of Testimony (N.T.) 4/15/14 at 3-4.)

Claimant stated that he did not doubt the identity of either witness. However, Claimant objected to allowing Peyton to testify by telephone if Peyton was within 50 miles of the hearing site in York. Milano responded that Peyton was a third-party testifying on Employer's behalf and Employer did not want to interfere with another company's ability to conduct business. Referee Foulke, to whom the case was initially assigned, overruled Claimant's objection and granted Employer's

___

[2] A handwritten notation of that information suggests that the names and telephone numbers were provided by telephone rather than email. *Id.*

request. (*Id.* at 5-6.) Shortly thereafter, the hearing was continued due to Employer's request for a file; the second scheduled hearing also was continued because Claimant did not receive notice, which had been sent to an incorrect address.

The matter was reassigned to Referee Zorach, who held a hearing on June 2, 2014. Kevin Hassett, Employer's division manager, appeared in person, and Milano and Peyton participated by telephone. Claimant again objected to Peyton's telephone testimony, questioning whether the type of compelling reason contemplated by 34 Pa. Code §101.128 was demonstrated. Milano responded that Peyton was a third party, employed by another company, and that Employer wanted to mitigate the impact that Peyton's testimony would have on his employer's business. The referee stated that his office has broad discretion to allow participation by telephone and that he would follow Referee Foulke's previous ruling. (N.T. 6/2/14 at 4-5.)

Peyton testified that on January 14, 2014, he was on a service call at Employer's York location. Peyton said that he was working on Employer's tire line when Claimant approached him and said that Peyton was not doing the work correctly and that Claimant could have done it much faster. According to Peyton, Claimant walked away and began making profane remarks directed at Peyton and his helper. Specifically, Claimant said "What the f--- are you looking at, bitch?" Peyton replied "Excuse me?" Claimant repeated the question and added "You can suck my ----." That was the end of the exchange. Peyton said that he had previously done work for Employer through his employer, Total Maintenance Solution (TMS), but had never met Claimant. He also stated that he did not use foul language during the encounter. (*Id.* at 6-7, 11.)

Peyton testified that he complained to his boss, and both men discussed the incident with Hassett, Employer's York division manager. At Hassett's request, they sent a written report of the incident to Employer in which they identified Claimant as an individual with a ponytail and tattoos. (N.T. 6/2/14 at 8-11; Ex. E-4.) The email from TMS's owner stated in part that "this type of behavior would not be tolerated by my employees nor will I subject them to this type of behavior. . . . I hope this matter does not have a reflection on our future relationship." (Ex. E-4.)

On cross-examination, Claimant asked how far TMS was from Employer's location in York, but the referee sustained Employer's objection to the question as not relevant. (N.T. 6/2/14 at 11-12.)

Hassett testified that he received the report of the incident from TMS's owner. He explained that Employer relies on TMS to repair its machines and that a refusal by TMS to come to the York location would be detrimental to Employer's business. Hassett stated that he informed his supervisor and Human Relations personnel of the incident and then asked for and received written documentation of the exchange from TMS. Hassett said that it was important to document the conduct because Employer had received prior complaints against Claimant regarding this type of sexual harassment. (*Id.* at 12-15.)

Hassett testified that Employer's employee handbook sets forth Employer's zero tolerance policy against sexual harassment. Hassett stated that his supervisor and Human Relations personnel determined that Claimant's comments violated that policy. Hassett added that Employer's handbook requires employees who experience harassment to report that conduct to their immediate supervisors. Hassett noted that while Claimant disputed Peyton's claims, Claimant never

4

complained to Employer's management and, in any event, he should not have responded with that type of language. (*Id.* at 15-16, 22.)

Claimant testified as follows. On the day in question he was working the line with his partner and another employee. A man working on the line asked for Claimant's opinion on how to fix it. Claimant told him it was not his job, and the man responded, "Well get the f--- out of here. Go back to your f----- line . . . ." The two men started arguing, but Claimant never cursed. All he said to Peyton was that if Peyton wanted to talk about this, Claimant got off work at 3:30 and they could discuss it outside. Claimant specifically denied using the language described by Peyton or any other obscene language. (*Id.* at 17-18.)

Claimant also offered the testimony of Roberto Vazquez. Vazquez testified that he was employed by Employer on January 14, 2014, and was present when Peyton was fixing the machine. Vazquez said he heard arguments between the men, including "Go back to your line. Go to your helpers. Do your F- job over there . . . ." He also heard Claimant tell Peyton that he finished work at 3:30 and that "they could talk about it outside." Vazquez testified that he heard Peyton use the "F word" and did not hear Claimant use any obscene language. (*Id.* at 20-21.)

The referee noted that Claimant had objected to allowing Peyton to testify by telephone. The referee stated that the witness was a mechanic for one of Employer's vendors and that Employer made the request so as not to inconvenience the mechanic's employment. The referee found that the request was inherently reasonable and concluded that Claimant offered no valid reason for denying the witness permission to testify by telephone. As to the merits, the referee credited Peyton's testimony and specifically found that Claimant approached Peyton and

5

directed obscenities at him. The referee concluded that Claimant engaged in willful misconduct rendering him ineligible for benefits under section 402(e) of the Law.

Claimant appealed to the Board, arguing that the referee erred and violated Claimant's due process rights by allowing Peyton to testify by telephone, absent evidence that Peyton was more than 50 miles from the hearing site or any other facts establishing that he was reasonably unavailable, as required by 34 Pa. Code §101.28. The Board affirmed the referee's decision and adopted the referee's findings and conclusions. The Board added that the regulations permit a witness to testify by telephone due to compelling employment reasons regardless of the witness's distance from the hearing location. The Board further stated that Employer's witness, a mechanic for another company, established this compelling employment reason and determined that Claimant's objection did not constitute grounds to conclude otherwise.

On appeal to this Court,[3] Claimant argues that the Board erred in concluding that Employer established the compelling reason required under 34 Pa. Code §101.28 to allow a witness to testify by telephone.

The Board's regulations explicitly state that in-person testimony is normally preferable to testimony by telephone and that testimony by telephone may be received only if specifically authorized by the regulations. 34 Pa. Code §101.127. In relevant part, the regulation at 34 Pa. Code §101.128 (scheduling of telephone testimony) provides as follows:

---

[3] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

(a) The tribunal may schedule, on its own motion, testimony by telephone of a party or witness when it appears from the record that the party or witness is located at least 50 miles from the location at which the tribunal will conduct the hearing, without regard to State boundaries.

(b) The tribunal may schedule testimony by telephone of a party or witness, at the request of one or more parties, when one of the following applies:

(1) The parties consent to the receipt of testimony by telephone.

(2) ***The party or witness is reasonably unable to testify in person due to a compelling employment, transportation, or health reason, or other compelling problem***.

(c) Only a party or witness scheduled to testify by telephone, or identified prior to the taking of testimony . . . may testify by telephone, and the testimony of each other party or witness shall be received in person.

(d) The tribunal will promptly rule on a request that testimony be taken by telephone after a reasonable attempt has been made to inform the parties of the request, the basis for the request, the regulations under which telephone testimony can be taken, and the right of a party to object. The basis for the request, the position of the parties, if known, and the ruling will be documented on the record.

34 Pa. Code §101.128 (emphasis added).

A party objecting to the taking of testimony by telephone must set forth the reasons for the objection and communicate them to the tribunal before the taking of testimony. 34 Pa. Code §101.129. The tribunal must rule promptly on the objections after a reasonable attempt to obtain the position of the other party. *Id.* A party may pursue an objection to telephone testimony at the hearing. If the objection is sustained, the hearing will proceed in accordance with applicable regulations. Notably, the regulations require a tribunal to permit parties a reasonable opportunity to question witnesses testifying by telephone for the purpose of verifying their identity. 34 Pa. Code §101.131.

7

Although Claimant phrases the argument several different ways, the ultimate issue on appeal is whether Peyton's status as an employee of a third-party company that serviced Employer's equipment and Employer's stated concern for maintaining that business relationship established that Peyton was "reasonably unable to testify in person due to a compelling employment . . . reason, or other compelling problem" as contemplated by 34 Pa. Code §101.128.

The question of what constitutes a compelling reason to allow testimony by telephone in an unemployment proceeding has not been specifically addressed by statute, regulation, or case law. Claimant argues that the Court should be guided by interpretations of "good cause" or "necessitous and compelling reason" for voluntary quit under section 402(b) of the Law, 43 P.S. §802(b), which require circumstances producing "pressure . . . that is both real and substantial." *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 832-33 (Pa. 1997). Claimant also points to analysis of the phrase "compelling reason" in *Pilon v. Pilon*, 492 A.2d 59, 60 (Pa. Super. 1985), distinguishing "good reasons" from "compelling reasons" in a decision addressing the burden a party bears in a custody case.[4]

Claimant argues that mere inconvenience is an insufficient basis to allow testimony by telephone under §101.128. Claimant maintains that in order to be a "compelling reason" rendering a witness reasonably unable to testify, circumstances must involve a real and substantial problem sufficient to overcome the

---

[4] Claimant also cites *DeSimone v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 1804 C.D. 2008, filed March 3, 2009), slip op. at 7, an unreported opinion, as holding that the denial of the claimant's request for a telephone hearing was not error or denial of due process where the claimant lived thirty-nine miles from the hearing site and acknowledged he could take public transportation. However, in summarizing this decision, Claimant omits the court's observation that the claimant conceded that he could take public transportation but he "felt it was not worth it."

8

Commonwealth's stated policy of preferring testimony in person. Claimant observes that in this case there is no evidence demonstrating that the witness was unavailable or that the witness or his employer had a compelling employment problem warranting a telephone hearing. Rather, according to Claimant, the record reflects only a desire by Employer to maintain good will with another business.

Claimant also argues that permitting Peyton to testify by telephone was an abuse of discretion and a denial of his due process right to a fair hearing. More specifically, Claimant complains that he was denied an opportunity to cross-examine Peyton in person and that he could not confirm whether the witness was testifying from his own independent recollection or reading from a prepared writing. Finally, assuming that Peyton's telephone testimony must be stricken, Claimant further contends that the record does not contain substantial evidence to support a determination of willful misconduct.

The Board responds that the safeguards contained in the Board's regulations address nearly all of Claimant's concerns. Specifically, the regulation at 34 Pa. Code §101.131 permits a party to question an opposing party's identity and provides punishment for falsification. In this case, Claimant was given an opportunity to question the identity of the witnesses testifying by telephone, and his counsel confirmed he had no doubt about their identity. The regulations prohibit prompting or directing testimony and testifying from documents not in the record. *Id.* The Board further notes that in unemployment cases, the Board is the ultimate factfinder and arbiter of witness credibility. Because the Board typically reviews

only transcripts of testimony, the observation of witness demeanor is irrelevant to its determinations.[5]

Further, the Board emphasizes that this Court "must defer to the Board's interpretation of its own regulation unless it is clearly erroneous." *McKnight v. Unemployment Compensation Board of Review*, 9 A.3d 946, 949 (Pa. Cmwlth. 2014). The Board notes that "an abuse of discretion is not merely an error of judgement . . . [but] occurs if, in reaching a conclusion, the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 713 (Pa. Cmwlth. 2013).

In considering the parties' arguments, we are mindful of the informal nature of unemployment compensation proceedings. Our Supreme Court emphasized this point in *Harkness v. Unemployment Compensation Board of Review*, 920 A.2d 162 (Pa. 2007), when it held that a non-lawyer who represents an employer in an unemployment proceeding is not engaging in the practice of law. In so deciding, the Supreme Court reasoned that an unemployment proceeding is largely routine and primarily focused on creating a factual basis, or record, by which the referee can render a decision. *Id.* at 168. The court explained in *Harkness* that the Law is remedial in nature; its purpose is to provide economic security to persons who are

---

[5] The Board also cites an unreported opinion, *Morris v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 2383 C.D. 2010, filed June 14, 2011), in which we held that "it is within the discretion of the referee to determine whether a proffered reason is compelling when considering a request to schedule testimony by telephone." In *Morris,* we upheld the denial of a request made on the day of the hearing. The Board asserts that in this case the referee similarly acted within his discretion by permitting Peyton to testify based on Employer's rationale that he is a third party and Employer's desire to mitigate the impact on its vendor's business.

unemployed through no fault of their own; and it is designed to allow such persons to obtain funds at the earliest point that is administratively feasible. *Id.*

> To this end, the unemployment compensation system must operate quickly, simply, and efficiently. The proceedings are 'by design, brief and informal in nature.' Thus, the claims for benefits are not intended to be intensely litigated. Unemployment compensation proceedings are not trials. The rules of evidence are not mandated; there is no pre-hearing discovery; the parties have no right to a jury trial; indeed there is no requirement that the referee be a lawyer. Also, and importantly, there are only minimal amounts of money in controversy. Issues arising in these matters are generally questions of fact not requiring complex legal analysis. Requiring employers to be represented by counsel will not only undermine the informal, speedy and low cost nature of these proceedings, it may dissuade many employers from defending claims for benefits leading to the possibility of an unwarranted drain on the system.

*Id.* (citations omitted). Accordingly, the court concluded that a finding that non-lawyer representatives were engaging in the practice of law by participating in unemployment proceedings "would impose an unnecessary burden on the public." *Id.* at 168-69.

The regulation at 34 Pa. Code §101.128 states that the witness must be "reasonably unable to testify in person due to a compelling employment, transportation, or health reason, or other compelling problem." In accord with *Harkness*, in interpreting this regulation, we likewise consider the informal nature of unemployment proceedings, the goal of efficient decision-making, and the potential burden our ruling might impose on the public.

We first conclude that the use of the word "reasonably" in the phrase "reasonably unable" suggests that the "compelling problem" need not be as compelling as circumstances justifying a voluntary quit or supporting a child custody

11

decision. More important, we conclude that as a matter of policy, neither a claimant nor an employer should have to choose between presenting critical evidence or suffering a detrimental impact to his employment or business.

Claimant argues that Employer could have subpoenaed Peyton's testimony and that Employer offered no evidence that it asked Peyton to testify or discussed the possibility of Peyton's live testimony with Peyton's employer. Claimant also complains that the compelling reason asserted in this case was asserted by Employer and not by a witness.

However, Employer bore the burden of proving willful misconduct at the hearing. Other than Claimant, Peyton was the only person who could provide first hand testimony concerning the only incident at issue and the material facts in dispute; therefore, his testimony was critical to Employer's case. Yet Peyton's only interest in this matter was as a potential witness employed by a third-party company. Through testimony and documentary evidence, Employer demonstrated that its relationship with Peyton's employer had already been strained by Claimant's misconduct, Employer depended upon Peyton's employer to repair its equipment, and Employer's business would suffer if Peyton's employer refused to return to Employer's York location. When these facts are considered in light of the informal nature of unemployment proceedings and the Supreme Court's admonition against imposing an unnecessary burden on the public, we agree that Employer's concern, that Peyton's live testimony and the corresponding imposition on Peyton's employer would have a detrimental impact on Employer's business, constituted a compelling problem rendering Peyton reasonably unable to testify in person for purposes of §101.128. Under these circumstances, the Board's determination was neither clearly erroneous nor manifestly unreasonable. *McKnight*; *Henderson*.

12

Accordingly, we affirm.

                                         _____

PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wilberto Torres-Bobe,                    :
                Petitioner              :
                             :    No.  1648 C.D. 2014
          v.                            :
                             :
Unemployment Compensation                :
Board of Review,                         :
                Respondent             :

## ***ORDER***

AND NOW, this 8th day of October, 2015, the order of the Unemployment Compensation Board of Review, dated August 18, 2014, is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge