IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solomon Dancey, : 
                Petitioner : 
                 : 
                 :   No. 964 C.D. 2017
        v. : 
                 :   Submitted: December 8, 2017
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: February 14, 2018

       Solomon Dancey (Claimant) petitions, *pro se*, for review of the July 12, 2017 order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision and order denying unemployment compensation benefits to Claimant pursuant to section 402(b) of Pennsylvania's Unemployment Compensation Law (Law).[1]

---

[1] Section 402(b) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b). Section 402(b) of the Law states that a claimant is ineligible for compensation for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

## Facts and Procedural History

Claimant worked part time as a house manager for Gaudenzia House (Employer) from February 29, 2016, through February 26, 2017. (Certified Record (C.R.) at Item No. 9, Notes of Testimony (N.T.), 5/1/17, at 4-5; Finding of Fact (F.F.) No. 1.)

The incident in question began when Claimant was working an 11:00 p.m. to 7:00 a.m. shift. Claimant observed a client moving towards the facility's dining area after permissible hours. When asked by Claimant, the client admitted that he did not have authorization from the facility's nurse.[2] Claimant tried to prevent the client from using the juice machine in the dining area, and, in response, the client allegedly grabbed a cup, smashed it on the floor, and pushed a table across the floor. Claimant asserts that the client, while walking away, made "lewd and malicious statements" about Claimant. Claimant responded to the alleged verbal assault by making a statement to the effect of, "[Y]ou're only saying that now because you're in here. Other than that, if it wasn't for this job, if you said that to me, I would rip your head off." (C.R. at Item No. 9, N.T., 5/1/17, at 6; F.F. No. 3.)

Shortly thereafter, other clients began asking Claimant about the incident. Claimant noticed that the client had exited the facility and was pacing outside. After he was unable to reach his director by phone, Claimant called the clinical director, Robin Lee, to inform her that the client had exited the building.

---

[2] Claimant's brief explains that, during a prior shift, he observed the same client eating various snacks in the dining room area outside of the permissible hours. At that time, Claimant informed the client that he needed to return to his floor because he was in violation of the rules. When the client stated that he needed to eat or drink because he was having a diabetic episode, Claimant explained that the client could not be granted special privileges and, instead, needed to obtain special authorization from the facility's nurse. Claimant then recorded the incident in the clinical staff's logbook so that it could be appropriately addressed by staff the next day. (Claimant's brief at 9.)

2

When Ms. Lee arrived at the facility, she spoke with the client. Meanwhile, other clients told Claimant that they were going to tell the other staff members that Claimant threatened the client. (*Id.* at 7.) When Ms. Lee was finished meeting with the client, the client formally apologized to Claimant, and Claimant assumed the incident was fully resolved. (*Id.* at 8.)

On February 27, 2017, Claimant met with the director, Warren Hodgkiss. (C.R. at Item No. 9, N.T., 5/1/17, at 14.) At the meeting, Claimant admitted that he threatened the client during the incident. (*Id.* at 9.) Mr. Hodgkiss informed Claimant that he sent a report of the incident to his "boss," and would be submitting the report to Employer's human resources department. (F.F. No. 4.) Mr. Hodgkiss explained to Claimant that, while he did not have the authority to terminate him, the human resources department might opt to do so. (F.F. No. 5.) Ultimately, Claimant resigned in lieu of discharge to protect his work record. (F.F. No. 6.)

On March 23, 2017, Claimant filed for unemployment compensation benefits. (C.R. at Item No. 1.) On April 7, 2017, the Pennsylvania Department of Labor and Industry issued its Notice of Determination finding Claimant ineligible for unemployment compensation benefits pursuant to section 402(b) of the Law. (C.R. at Item No. 5.) Claimant appealed the Department's determination. (C.R. at Item No. 6.)

After holding a hearing on May 1, 2017, the referee issued a decision and order dated May 9, 2017, which affirmed the Department's determination. (C.R. at Item No. 10.) Claimant timely appealed the referee's decision to the Board. (C.R. at Item No. 11.) On July 12, 2017, the Board issued its decision affirming the referee's May 9, 2017 decision and order. (C.R. at Item No. 12.)

Claimant timely filed a petition for review with this Court.

**Discussion**

On appeal,[3] Claimant argues that (1) the Board erred in finding that he intentionally terminated his employment with Employer; and (2) he was denied due process because Employer failed to investigate the incident and because he was not reprimanded in any way before Employer indicated that he may be terminated.

Section 402(b) of the Law provides that "[a]n employe shall be ineligible for compensation for any week—(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in 'employment' as defined in this act . . . ." 43 P.S. §802(b).

Under section 402(b) of the Law, a claimant who voluntarily quits his employment bears the initial burden of proving that he did so for necessitous and compelling reasons. *Wert v. Unemployment Compensation Board of Review*, 41 A.3d 937, 940 (Pa. Cmwlth. 2012). Specifically, a claimant must demonstrate that (1) circumstances existed which produced pressure to terminate employment that was both real and substantial; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to maintain his employment. *Id.* "[W]e must examine the circumstances surrounding each claimant's departure on an individual basis, so as to understand what exigencies he faced at the time he decided to separate from employment." *Petrill v. Unemployment Compensation Board of Review*, 883 A.2d 714, 715 (Pa. Cmwlth. 2005) (quoting *Pacini v.*

---

[3] On appeal, our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015).

*Unemployment Compensation Board of Review*, 518 A.2d 606, 607 (Pa. Cmwlth. 1986)).

## Voluntary vs. Constructive Discharge

First, we address Claimant's argument that he did not voluntarily terminate his position with Employer; rather, he contends that he was constructively discharged, having been forced to resign to prevent termination and to protect his work record. Claimant asserts that, during his meeting with Mr. Hodgkiss, it became clear that he did not have the support of the director and was not presented with any option other than termination under the circumstances.

We addressed a similar scenario in *Charles v. Unemployment Compensation Board of Review*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989). There, the claimant argued that he voluntarily quit his job to avoid termination for violation of his employer's attendance policy. The claimant submitted that, when he requested a layoff, his manager responded by telling him that "there [was] nothing, there [was] no way that he could do anything for [him], he said the only thing that [claimant] could do was [to] take three days off and get fired." *Id.* The Court held that the mere possibility of termination is insufficient to constitute constructive discharge; rather, "[a]n employer's language must possess the immediacy and finality of a firing in order for that language to be interpreted as discharge." *Id.* In that case, we explained that the director's statement to the claimant "did not compel [him] to leave his job," and that the claimant did not determine whether he would, in fact, be terminated before he voluntarily quit. *Id.* Thus, "[w]here an employee resigns in order to avoid the *chance* of being fired, that employee is deemed to have voluntarily

5

quit." *Id.* (citing *Scott v. Unemployment Compensation Board of Review*, 437 A.2d 1304 (Pa. Cmwlth. 1981)) (emphasis added).

Similarly, in the case before us, we find that the director's statement to Claimant at the February 26 meeting fails to possess the requisite "immediacy and finality" to constitute a discharge. Rather, his words merely suggested that Employer's human resources staff *could* or *may* terminate Claimant because of the verbal altercation with the client. At the May 1, 2017 hearing before the referee, Mr. Hodgkiss testified, "[T]he essence of the conversation was that I can probably go for termination because that's what often happens in this kind of case but [Claimant is] welcome to resign as well and in that way avoid having anything on the record." (C.R. at Item No. 9, N.T., 5/1/17, at 14.) Mr. Hodgkiss testified that, if Claimant chose not to resign, a written corrective action would have been submitted to the human resources department, and Claimant would have been suspended pending the results of an investigation. (*Id.*) However, it is undisputed that Mr. Hodgkiss, regardless of his recommendation of discharge, did not have the actual authority to terminate Claimant's employment. (F.F. No. 5.) Claimant testified that, although he felt he was in a "no win situation," it was his choice to resign. For these reasons, we conclude that the Board's determination that Claimant voluntarily terminated his employment with Employer, and was not constructively discharged, is supported by substantial evidence.[4]

---

[4] At the beginning of the May 1, 2017 hearing, the referee expressly stated that, "[b]ecause the determination indicated there was a conflict regarding the nature of the separation, the parties were notified in writing that the voluntarily leaving provisions of [s]ection 402(b) and the discharge provisions of 402(e) will be considered in determining the Claimant's eligibility for benefits." As the Board explained in its determination and order dated July 12, 2017:

## Cause of Necessitous and Compelling Nature

Having determined that Claimant voluntarily quit his job with Employer, we must now consider whether Claimant met his burden of establishing that his voluntary termination resulted from a cause of necessitous and compelling nature. *Charles*, 552 A.2d at 729. Claimant asserts that the desire to preserve his work record constitutes a necessitous and compelling cause. We disagree.

To establish a cause of necessitous and compelling nature, a claimant must show that the pressure to resign was real and substantial. In this case, the record contains no evidence to suggest that Claimant faced such real and substantial pressure. We explained that employer's statement to Claimant—that the incident would be reported to the human resources department and that Claimant may ultimately face termination—did not possess the immediacy and finality of a firing. It follows, then, that this statement, by itself, did not rise to the level of "real and substantial" pressure to resign.

Further, Claimant failed to demonstrate that he made a reasonable effort to maintain his employment. Mr. Hodgkiss testified that, had Claimant not resigned at the February meeting, the incident would have been forwarded to the human resources department, at which time Claimant would have been suspended pending the results of an investigation. Claimant did not allow this process to unfold. While

> If an employee resigns to avoid an imminent discharge, the separation will be treated as a firing and eligibility will be determined under [s]ection 402(e) of the Law. If an employee resigns to avoid a mere possibility of dismissal, the separation will be considered as voluntary and eligibility will be determined under [s]ection 402(b) of the Law.

(Board's op. at 2.) Therefore, because we find that Claimant voluntarily terminated his employment, it is not necessary for us to consider the Claimant's eligibility for benefits under section 402(e) of the law.

7

termination was certainly a possible outcome of any investigation, such an investigation may have resulted in a lesser form of discipline, which could have allowed Claimant to maintain his position with Employer. In fact, Employer presented an email dated April 6, 2017, suggesting that termination was not necessarily forthcoming, stating, "After going through our records, I have no documentation that shows Mr. Dancey on a 'Last Chance Agreement' so from my knowledge he was not in [l]ieu of being discharged." (C.R. at Item No. 3.) Finally, Claimant admitted Mr. Hodgkiss neither told him to resign, nor terminated him; rather, he felt he had to resign in order to avoid termination and preserve the possibility of return to work for Employer after earning an advanced degree. Thus, we find that the record contains substantial evidence to support the Board's determination that Claimant did not voluntarily resign based upon a cause of a necessitous and compelling nature.

**Due Process**

Finally, Claimant argues that Employer violated his due process rights because the director intended on terminating him without an investigation. On the contrary, Mr. Hodgkiss' testimony expressly indicates that, had Claimant not resigned, the matter would have been directed to the human resources department for an investigation. Therefore, we find any due process argument to be without merit.

**Conclusion**

Because Claimant's termination of employment was voluntary, and because he did not meet his burden of establishing that this voluntary termination

was due to a necessitous and compelling reason, we cannot conclude that the Board erred in affirming the referee's decision and order finding Claimant ineligible for unemployment compensation benefits under section 402(b) of the Law.

Accordingly, the Board's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Solomon Dancy,                              :
              Petitioner        :
                                    :     No.  964 C.D. 2017
        v.                              :
                                      :
Unemployment Compensation                   :
Board of Review,                            :
              Respondent        :

# *ORDER*

AND NOW, this 14th day of February, 2018, the order of the Unemployment Compensation Board of Review, dated July 12, 2017, is affirmed.

 

 

 

_____
PATRICIA A. McCULLOUGH, Judge
