**Cathy L. RUNG, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 13, 1996

Decided Feb. 12, 1997.

Lenore M. Urbano, Williamsport, for petitioner.

Linda S. Lloyd, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, Harrisburg, for respondent.

Before COLINS, President Judge, PELLEGRINI, J., and LORD, Senior Judge.

COLINS, President Judge.

Cathy Rung (Claimant) appeals from the order of the Unemployment Compensation

Board of Review (UCBR) that affirmed the referee's denial of benefits to Claimant pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).[1]

Claimant was last employed as head teller for the Woodlands Bank (Employer) from August 28, 1995 through January 31, 1996 at a wage rate of $7.75 per hour. Employer had a policy for its tellers that provided a "no-fault" point system depending upon the dollar range of overage or shortage per occurrence. More specifically, the points ranged from one point for an occurrence of $10.00 to $25.00 in overage/shortage, to the maximum of 20 points where the difference exceeded $300.00. Under Employer's policy, any single difference of $600.00 or more or an accumulation of 26 points might result in disciplinary action up to and including termination. Additionally, Employer's policy provides for a one-week grace period during which the employee could correct a monetary difference. However, the teller is not permitted to keep any overage or use personal funds to cover any shortage in order to avoid accumulating points. The referee's findings of fact state that Claimant was aware of Employer's policy and that prior to joining Woodlands Bank, she had 16 years banking experience, including at least one and one-half years as a teller.

On December 12, 1995, Claimant had accumulated a total of 27 points under Employer's policy. One occurrence that resulted in the point accumulation took place in October of 1995 when Claimant cashed a third-party check for a non-depositor, without first verifying whether the customer was a depositor to ensure coverage of the amount cashed. For this error, Claimant received 15 points on October 20, 1995. She was placed on a 60–day probation and received warning that accumulation of additional points could result in further disciplinary measures up to and including termination. Because Claimant was a head teller, Employer wished to avoid a disciplinary suspension of Claimant that would undermine her authority with the other tellers. Subsequent to the 60–day probation, Claimant, on December 19, 1995, accumulated two points due to a $46.00 overage.

As a result, on January 11, 1996, Claimant was placed on a one-week disciplinary suspension without pay and was told to report back to work on January 19, 1996. But on January 24, 1996, another event occurred that resulted in point accumulation for Claimant. A customer, who had cashed a certificate of deposit at another teller's window, and who received the money in $20.00 and $50.00 bills, proceeded to Claimant's window and requested $100.00 bills. Having just returned from her break and feeling hurried, Claimant gave the customer the requested denominations. Almost immediately after completing the transaction, but after the customer had left the bank, Claimant realized she had a $600.00 shortage in her till. Claimant immediately reported the shortage to her supervisor and admitted responsibility for it, although she felt she had been the victim of a scam. Claimant further averred that her mistake was not deliberate, but rather the result of carelessness in counting during the transaction.

Employer allowed Claimant to make one telephone call to the customer to inquire whether the customer had received more than the correct amount of money from Claimant. The customer denied receiving more funds than appropriate, and no amount was recovered for restitution during the one-week grace period. Employer discharged Claimant on February 2, 1996 because of violations of Employer's policy.

The Job Center issued a determination denying Claimant benefits, and Claimant appealed. After a hearing at which Claimant, along with a paralegal, and Employer's witness testified, the referee affirmed the Job Center's determination. The Findings of Fact note that it is not uncommon for tellers to have eight or nine overage or shortage occurrences during a six-month period; how-

---

1. Subsection 402(e) of the Law provides in pertinent part:

    An employe shall be ineligible for compensation for any week—

    (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .

ever, Claimant had four "major" occurrences during the five-month period of her employment. The referee further found that Claimant's errors were the result of poor judgment, carelessness, and failure to adhere to generally accepted teller procedures. The Board affirmed on May 24, 1996, and this appeal followed.

■ Our scope of review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, errors of law were committed, or finding that essential facts are not supported by substantial evidence. *Lee Hospital v. Unemployment Compensation Board of Review*, 161 Pa.Cmwlth. 464, 637 A.2d 695 (1994).

■ On appeal, Claimant avers that the Board erred in finding that her actions were in disregard of Employer's overage/shortage policies and were without good cause, thereby rendering her ineligible for benefits in accordance with Section 402(e) of the Law, 43 P.S. § 802(e). Claimant also contends that Employer failed to prove that Claimant's actions were deliberate and willful as required for being disqualified for benefits under Section 402(e).

This Court has consistently reaffirmed that:

Where an employee has been discharged based upon willful misconduct in violating employer's work rule, the burden is on the employer to establish both the existence of a reasonable work rule and its violation.... Once the employer proves the existence of a rule, its reasonableness, and the fact of its violation, the burden of proof shifts to the claimant to prove that he had good cause for his action....

While this Court has held that, normally, inadvertent, non-intentional violations of an employer's work rules will not constitute willful misconduct, ... we have created an exception to this general rule where an employee's conduct could jeopardize an employer's effective operations or place the public at risk.

*United Refining Company v. Unemployment Compensation Board of Review*, 661 A.2d 520 (Pa.Cmwlth.1995). Applying the *United Refining* rationale to the present case, we find Employer's "point system" to be a feature of what presumably is Employer's broad-based policy of encouraging the highest standards of accuracy among its tellers. Although this system might well benefit from reexamination and revamping, there is no dispute that Claimant failed to offer any compelling explanation for her errors other than carelessness and inattentiveness to her job duties.

At the same time, however, we find too all-encompassing *United Refining Company's* reference to an "employee's conduct jeopardizing the employer's effective operations," in that almost every instance of violating an employer's policies interferes with Employer's proper functioning. Not every instance, however, rises to the level of "willful misconduct," as delineated by our Supreme Court in *Myers v. Unemployment Compensation Board of Review*, 533 Pa. 373, 378, 625 A.2d 622, 625 (1993), when it clearly stated:

Thus, the Commonwealth Court has held that an employee's negligence constitutes willful misconduct only if:

... it is of 'such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.'

... Therefore, it follows that an employer cannot demonstrate willful misconduct by 'merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature.'

After reviewing the present record in light of *Myers*, we find that Claimant's actions, while unequivocally careless, constitute negligence rather than "intentional and deliberate" misconduct. Of relevance in this regard is the following differentiation of negligence versus willful misconduct made by the majority in *Myers* as it took issue with the dissent's position:

[The dissenting opinion] then ignores this Court's decision in *McLean v. Unemployment Compensation Board of Review*, 476

Pa. 617, 619–21, 383 A.2d 533, 535 (1978), and instead adopts a Commonwealth Court standard for determining 'willful misconduct,' stating that:

> Evidence of a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce substantial financial loss to the employer is sufficient to support the conclusion that an employee is guilty of willful misconduct. *Walton v. Unemployment Compensation Board of Review,* 96 Pa.Cmwlth. 472, 508 A.2d 380 (1986); . . . .

*Concurring Opinion,* 533 Pa. at 387, 625 A.2d at 630. Thus, he concludes that appellant's actions constituted willful misconduct, despite the employer's failure to show any intentional conduct by the appellant.

We refuse to adopt this standard because it improperly equates 'negligence' and 'willful misconduct'—which are not interchangeable. Mere 'negligence' does not rise to the level of 'willful misconduct' without the additional element of an *intentional* disregard of the employer's interests. See *McLean,* at 619–21, 383 A.2d at 535. Additionally, this standard ignores the fact that the legislature specifically used the term 'willful misconduct' in § 402(e) of the Unemployment Compensation Law and not mere 'negligence.'

*Id.* at 380 n. 3, 625 A.2d at 626 n. 3. Employer in the present matter has failed to establish that Claimant's errors, while undoubtedly careless, were the result of any "intentional" disregard of Employer's policies. Indicative of Claimant's good faith concerning these occurrences is evidenced by her notifying Employer immediately upon discovering her "shortages," without attempting to conceal or minimize them.

■ Thus, we note that Claimant's negligence, while possibly warranting her discharge by Employer, does not automatically disqualify her for benefits under the Law. This issue was clarified in *Bortz v. Workmen's Compensation Appeal Board,* 656 A.2d 554, 559 (Pa.Cmwlth.1995), *affirmed,* —— Pa. ——, 683 A.2d 259 (1996), which, although a workers' compensation matter, stated the following:

> In contrast, we note this court has reviewed many situations where an employee was discharged for unsatisfactory job performance and received unemployment compensation. This is a crucial distinction because a determination by an unemployment compensation referee that an employee's behavior did not constitute willful misconduct is not a determination that the employee should not have been discharged. Incompetence, inexperience, or inability may well justify discharge, yet, at the same time, such conduct does not constitute willful misconduct so as to render an employee ineligible for unemployment benefits. *Geslao v. Unemployment Compensation Board of Review,* 103 Pa.Commonwealth Ct. 116, 519 A.2d 1096 (1987).

(Footnotes omitted.)

Accordingly, we reverse the Board's decision and remand the matter to the Board for computation of benefits.

### ORDER

AND NOW, this 12th day of February, 1997, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed, and the matter is remanded to the Board for computation of unemployment benefits.

Jurisdiction relinquished.