IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph G. Clark,               :
                Petitioner     :
                               :
        v.                     :  No. 469 C.D. 2015
                               :  Submitted: September 11, 2015
Unemployment Compensation Board :
of Review,                     :
                Respondent     :

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge[1]
          HONORABLE MARY HANNAH LEAVITT, Judge[2]
          HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                              FILED: January 6, 2016

        Joseph Clark (Claimant) petitions for review of an adjudication of the
Unemployment Compensation Board of Review (Board) denying his application
for unemployment compensation benefits.  In doing so, the Board affirmed the
decision of the Referee that Claimant was ineligible for benefits under Section
402(e) of the Unemployment Compensation Law (Law), 43 P.S. §802(e),[3] by
reason of his willful misconduct.  For the reasons that follow, we reverse.

---

[1] This case was assigned to the opinion writer before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[3] Act of December 5, 1936, Second Ex. Sess., P.L (1937) 2897, *as amended*, 43 P.S. §802(e).  It states that "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."

Claimant was employed by the Pennsylvania Liquor Control Board (Employer) as a Liquor Store General Manager beginning in October 1990. On August 19, 2014, Claimant was suspended pending an investigation into his violation of Employer's return policy. Employer discharged Claimant on October 8, 2014. The stated reason for Claimant's discharge was processing a fraudulent return of merchandise. Claimant applied for unemployment benefits, and the UC Service Center denied his application. Claimant appealed, and a hearing was held before the Referee. Employer presented the testimony of four witnesses: Ericka Nale, Human Resource Analyst; Joseph Santingco, Audit Specialist; John Hawrylack, District Manager; and Thomas Doyle, Store Support Coordinator.

Human Resource Analyst Ericka Nale explained Employer's written policy regarding the handling of returned items. A customer returning merchandise must show the liquor store clerk a copy of the original receipt. If the customer wishes to keep the original receipt, the clerk must write the original receipt number on the return receipt, which the store retains for its records. When a customer returns an item without a receipt, the clerk must issue the refund as a gift card, rather than cash. Additionally, if an item priced over $50 is returned without a receipt, the return must be approved by the district manager. Nale testified that on the day in question, August 9, 2014, Claimant processed a return of two bottles of Grey Goose Vodka, priced at $57 per bottle. Claimant processed the return as a cash refund. He did not collect an original receipt and did not obtain approval for the refund from his district manager. A copy of the return receipt could not be found.

District Manager John Hawrylack testified that he received an e-mail from an employee in Claimant's store that a return receipt was missing for the two

returns Claimant did on August 9, 2014. Hawrylack went to the store to search for the missing receipt but was unsuccessful. Hawrylack did discover that immediately prior to processing the return, Claimant had done a price check on Grey Goose Vodka. This sent up a "red flag" in Hawrylack's mind because he could think of no reason why Claimant would have done both a price check and a return. Notes of Testimony, October 10, 2014, at 44 (N.T. ___). Hawrylack testified that he reviewed the video security footage of the transaction and that "it did not show a customer at the register or any bottles" on the counter. *Id.* Hawrylack concluded that Claimant had falsified the return for the cash.

On cross-examination, Hawrylack admitted that the video did not show claimant taking cash from the register:

> [Counsel for Claimant]: … So what video -- because you seem to have a lot of video here, what video actually shows [Claimant] or what witness told you that [Claimant] took money?
>
> [Hawrylack]: Nothing.
>
> [Counsel for Claimant]: Okay. Even with all those camera angles, we have nothing?
>
> [Hawrylack]: Physically him taking money, if that's what I'm saying that's happened….
>
> [Counsel for Claimant]: Right.
>
> [Hawrylack]: … there is no camera angle to see that.

N.T. 58-59. Hawrylack acknowledged that Claimant was fired for processing a fraudulent return, not for violating the return receipt policy.[4]

---

[4] Hawrylack testified as follows:
**(Footnote continued on the next page . . .)**

The Referee questioned Employer's witnesses regarding its investigation of Claimant. Nale responded that the inventory count of Grey Goose Vodka in the computer matched the inventory on the shelf:

> [Referee]: So, how did the Commonwealth suffer a loss then?
>
> [Nale]: We either would have had two bottles of merchandise, or we would have had $127.18. The loss is we don't have those.
>
> [Referee]: So, did inventory show that there was two bottles missing?
>
> [Nale]: No. On the day he did the return, we don't have information on the inventory. *It's presumed that it was over*.
>
> [Referee]: So, was there an inventory done during the course of this investigation?
>
> [Nale]: There was inventory counted after the transactions.
>
> [Referee]: And what did that inventory show.
>
> [Nale]: *It hit*.

N.T. 12 (emphasis added). Later, the Referee continued this line of questioning:

---

**(continued . . .)**

> [Counsel for Claimant]: And the not writing down the numbers or not keeping the return slip, that would not fall under the policy that you [previously] talked about that would result in discharge, correct?
>
> [Hawrylack]: Probably not.
>
> [Counsel for Claimant]: Okay.
>
> [Hawrylack]: I mean, I don't make that decision.
>
> [Counsel for Claimant]: All right. In your opinion, it's the fraudulent transaction allegation that [raises] it to the level of discharge....
>
> [Hawrylack]: Correct.

N.T. 58.

4

[Referee]: Did the inventory show that it was over or under what should have been there?

[Nale]: After the transaction happened, it showed the inventory hit on that product.

[Referee]: So what does inventory hit? Does it mean the inventory was then correct or incorrect?

[Nale] Prior to the transaction, we don't know what the inventory on product was.

[Referee]: So you can't tell, based on the inventory, whether the product was returned or not returned?

[Nale]: Based on the video, when he's performing…

[Referee]: I'm not asking about the video. I'm asking about the inventory, as [Counsel for Claimant] did.

[Nale]: *We don't know the inventory at the time he performed the transaction.*

N.T. 14-15 (emphasis added). Essentially, Employer believed that there were two extra bottles of Grey Goose Vodka on the shelf, not recorded in the store's inventory, when Claimant committed the fraud. When asked how the store could have two extra bottles, Hawrylack responded, "I can't answer why there was [sic] two extra bottles of the product in the store." N.T. 56. Nale testified that such a discrepancy could explain why Claimant would have conducted a price inquiry prior to processing the questioned return.[5]

---

[5] The following exchange occurred between Nale and the Audit Specialist, Joseph Santingco:

> [Nale]: And can the price inquiry give him information on the stock on hand?
> [Santingco]: Absolutely.
> [Nale]: So he can see what inventory he should have versus what he does have?
> [Santingco]: That's right.

**(Footnote continued on the next page . . .)**

5

Claimant testified on his own behalf. Claimant testified that the customer had an original receipt for the two bottles of vodka, so he processed the return as a cash refund. Claimant stated that the customer wanted to keep the original receipt, and he forgot to write down the receipt number. Claimant believed he put the return receipt in the office as required by store policy and that it must have been lost thereafter. The Referee asked Claimant if the surveillance video depicted him processing a return of two bottles of vodka. Claimant replied, "That, you know, image, no." N.T. 62.[6]

On October 17, 2014, the Referee affirmed the UC Service Center's determination that Claimant was ineligible for unemployment benefits. The Referee found that Employer "could not determine by the video or by the transactions that were reviewed whether [Claimant] actually took money from [Employer]." Referee's Decision at 2, Finding of Fact No. 10. Nevertheless, the Referee reasoned that Claimant "failed to follow the employer procedures by not filling out the [return] receipt when he gave the [original] receipt back to the customer" and "did not provide a gift card to the customer but instead provided a

---

**(continued . . .)**

> [Nale]: Could he presumably see that he had inventory overage on the price inquiry function?
>
> [Santingco]: Yes, he could do that.

N.T. 24.

[6] The timestamp on the video indicated that it was recorded on August 11, 2014, not August 9, 2014. Nale attributed this two-day discrepancy to compatibility issues between the security system and Employer's computer system. Nale explained that the surveillance video of Claimant could not have been recorded on August 11 because Claimant was on vacation from August 10 to August 18. Store Support Coordinator Thomas Doyle testified that the video was recorded on August 9, which he determined by comparing distinctive sales that occurred on August 9 with store records.

cash return." Referee's Decision at 2. The Referee held that these violations of Employer's return policy constituted willful misconduct.

On appeal, the Board affirmed. It explained:

[Employer] has not shown that [Claimant] actually stole any of its funds. However, [Employer] has shown that [Claimant] violated several of its policies. [Claimant] did not properly process paperwork to validate the alleged return of the vodka. [Claimant] did not contact the district manager concerning the return and gave cash, rather than a gift card, pursuant to policy, as he did not have the receipt in his possession.

Board Adjudication at 3. Claimant now petitions for this Court's review.

On appeal,[7] Claimant argues that the Board erred in two respects. First, Claimant contends that the Board erred in concluding that he committed disqualifying willful misconduct. Second, Claimant asserts that Employer's reasons for discharging Claimant were not supported by substantial evidence.

The burden of establishing willful misconduct is on the employer. *Perotti v. Unemployment Compensation Board of Review*, 475 A.2d 947, 949 (Pa. Cmwlth. 1984). "Willful misconduct is conduct that evidences: '(1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.'" *Nolan v. Unemployment*

---

[7] Our scope of review in unemployment compensation cases is to determine whether errors of law were committed, essential facts are supported by substantial evidence, or constitutional rights were violated. *Rung v. Unemployment Compensation Board of Review*, 689 A.2d 999, 1001 (Pa. Cmwlth. 1997).

*Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981) (quoting *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 309 A.2d 165, 168 (Pa. Cmwlth. 1973)). An employer need not show actual malice on the claimant's part, only "an indication of conscious wrongdoing or negligence in such degree or recurrence as to manifest culpability." *Id*.

To begin, we must define the misconduct at issue in order to determine whether the Board erred in holding that it was willful. Undoubtedly, "the deliberate falsification of employment records constitutes a conscious disregard of standards of behavior which an employer has the right to expect from his employees." *Nolan*, 425 A.2d at 1205. However, the Board specifically found that Employer did not meet its burden of showing that Claimant falsified store records. As such, Claimant cannot be denied unemployment benefits for processing a fraudulent return. Rather, Claimant's wrongdoing was failing to record the original receipt number and making a return of cash in excess of $50 without approval of the District Manager.[8] Therefore, the issue *sub judice* is whether Claimant's departure from Employer's directions on record keeping constitutes willful misconduct. *Rung v. Unemployment Compensation Board of Review*, 689 A.2d 999 (Pa. Cmwlth. 1997), is instructive in this regard.

In *Rung*, the claimant was a bank teller who inexplicably came up $600 short when cashing out her till at the end of the day. The claimant's employer had a rule that any shortage of $600 or more from a teller's cash register

---

[8] Claimant only had to contact the District Manager for returns in excess of $50 where the customer does not present the receipt. Claimant testified that the customer did present the receipt and wanted to keep it. The Board did not make an express credibility finding about any of Claimant's testimony.

8

could result in disciplinary action, up to and including discharge. The employer fired the claimant. The Board denied the claimant's application for unemployment benefits. On appeal to this Court, we reversed. We noted that inadvertent, non-intentional violations of an employer's policies do not constitute willful misconduct. *Rung*, 689 A.2d at 1001. Furthermore, we explained:

> [A]n employer cannot demonstrate willful misconduct by 'merely showing that an employee committed a negligent act, but *instead must present evidence indicating that the conduct was of an intentional and deliberate nature*.

*Id.* (emphasis added) (quoting *Myers v. Unemployment Compensation Board of Review*, 625 A.2d 622, 625 (Pa. 1993)). Because the claimant's error was the result of nothing more than mere negligence, the claimant had not committed willful misconduct. Therefore, the claimant was entitled to unemployment benefits.

Here, Claimant's actions are analogous to the actions of the claimant in *Rung*. Claimant violated Employer's return policy because he did not obtain the District Manager's approval for a cash refund in excess of $50, did not record the original receipt number on the return receipt and did not securely file the return receipt in the store's office. The Board rejected Employer's position that Claimant faked a return to steal $127.18, and there is no evidence that Claimant is responsible for the lost return receipt. Without a predicate finding that Claimant was actively seeking to manipulate store records, Employer has not shown that Claimant's conduct constituted more than negligence. This conclusion is bolstered by Hawrylack's testimony that Claimant would not likely have been fired if Employer did not suspect Claimant of stealing cash. Finally, Employer could not

9

explain why the inventory matched the bottles on the shelf. *See* N.T. 58. Employer did not prove that Claimant committed willful misconduct.

Accordingly, we reverse the Board's decision and remand the matter to the Board for computation of benefits.

_____
MARY HANNAH LEAVITT, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph G. Clark,                                    :
                      Petitioner                    :
                                                    :
             v.                                     :    No. 469 C.D. 2015
                                                    :
Unemployment Compensation Board                     :
of Review,                                          :
                      Respondent                    :

# **O R D E R**

AND NOW, this 6th day of January, 2016, the order of the Unemployment Compensation Board of Review dated January 14, 2015, in the above-captioned matter is hereby REVERSED and this matter is REMANDED to the Board for computation of benefits.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, Judge