## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Russello, : 
              Petitioner : 
               : 
          v. : No. 2044 C.D. 2016
               : Submitted: June 30, 2017
Unemployment Compensation : 
Board of Review, : 
              Respondent : 


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**              **FILED:  August 28, 2017**


         Petitioner Michele Russello (Claimant), acting *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board), affirming a Referee's determination of Claimant's ineligibility for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law),[1] pertaining to willful misconduct.  For the reasons set forth below, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Sun Federal Credit Union (Employer) employed Claimant as a full-time member services representative from March 28, 2016, until June 9, 2016. (Certified Record (C.R.), Item No. 17 at 4.) Claimant filed for unemployment compensation benefits following her discharge. (C.R., Item No. 2.) The Duquesne Unemployment Compensation Service Center (Service Center) issued a determination finding Claimant ineligible for unemployment compensation benefits. (C.R., Item No. 9.) Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing. (C.R., Item No. 17.)

At the evidentiary hearing, Employer's witness, Kenny Montout (Montout),[2] testified that Employer discharged Claimant "[d]ue to a lack of performance and continuous policy violation." (*Id.* at 5.) Specifically, Montout testified that Claimant violated Employer's service behaviors policy when she erroneously deposited funds on a member's Visa card. (*Id.* at 9-10.) Montout further testified that on two occasions, Claimant violated Employer's professional dress code when she arrived to work wearing open-toed sandals. (*Id.* at 10.) Montout testified that Claimant violated Employer's cash drawer policy[3] when Claimant failed to notify a manager when Claimant's cash drawer came up short on two occasions. (*Id.* at 6-7.) Claimant's cash drawer was first short $10.00 on

---

[2] Montout works as a manager at Employer's branch where Claimant also worked.

[3] Employer's cash drawer policy states, in relevant part, that "[o]nce the [member services representative] has determined they are out of balance they must notify a manager," and "[a]ll over/short amounts must be posted the same day after all resources have been exhausted." Claimant signed a document, dated April 7, 2016, acknowledging that she received, read, and understood the cash drawer policy. (C.R., Item No. 8.)

April 22, 2016. (*Id.* at 6.) On May 20, 2016, Claimant's cash drawer was short $11.00. (*Id.*) Montout explained that, following a surprise audit of Claimant's cash drawer, he discovered the second short on May 24, 2016. (C.R., Item No. 17 at 6.) Montout then called Claimant, who was assisting at another branch in Havertown, Pennsylvania. (*Id.* at 11, 24.) Claimant first denied having been aware of the short, but she subsequently called Montout back to apologize for lying and to admit to knowing of the short and "force balancing" her drawer.[4] (*Id.*) Claimant attempted to fix the short herself by withdrawing $11.00 from a member's account. (*Id.*) Claimant did not notify the member of the withdrawal or obtain the member's permission to make the withdrawal. (*Id.* at 11-12.) Montout testified that the withdrawal violated Employer's cash drawer policy and code of conduct.[5] (*Id.* at 12.) Throughout Claimant's employment, Employer held five or six one-on-one coaching sessions with Claimant in an attempt to retrain her and make sure she "was on the right path in [her] development." (*Id.*) Employer subsequently discharged Claimant as a result of the accumulation of violations of Employer's policies. (*Id.*) Montout, nonetheless, testified that Claimant "was not hired with any experience in the work" and that she made a "sincere effort to learn the work." (*Id.* at 7.)

---

[4] "Force balancing" refers to forcing a drawer to balance with the knowledge that the numbers are incorrect. (C.R., Item No. 17 at 11.)

[5] Montout testified that Claimant was aware of the cash drawer policy and code of conduct at the time of the withdrawal. (C.R., Item No. 17 at 12.) Montout further testified that Claimant "went against . . . my instructions as far as settling [her] drawer short. Instead she went into the person's account and took the money without his or her knowledge." (*Id.* at 20.)

Claimant admitted to erroneously depositing funds on a member's Visa card, but she testified that she made the unintentional mistake on her third day of work. (*Id.* at 20-21.) Claimant also testified that Montout sent her home to change shoes only once, not twice. (*Id.* at 21.) In regard to the April 22, 2016 short, Claimant testified that she did not know where the $10.00 short came from because she, Montout, and another employee named Ray all used the shorted cash drawer that day. (*Id.*) In regard to the May 20, 2016 short, Claimant testified that she accidentally overpaid one of the bank's members. (*Id.* at 21-22.) Claimant further testified that Employer never trained her in how to respond to a short where Claimant knew where and to whom the overpayment went. (*Id.* at 23-24.) Claimant refrained from asking a manager or a co-worker how to handle the short because a manager told her that her co-workers were frustrated with her asking them questions. (*Id.* at 22.) Claimant also testified that Montout intimidated her and did not support her.[6] (*Id.* at 34.) Claimant did not believe that she "technically" shorted her drawer because the money was not missing and she knew which member she overpaid. (*Id.*) Claimant testified that she contacted the member in question and left a message for him after speaking with a woman she believed to be his mother. (*Id.* at 32-33.) Claimant further testified that she withdrew $11.00 from the member's account only after receiving instruction to do so from Montout.[7] (*Id.*) Claimant testified that she was aware of

---

[6] Claimant argues in her brief that Montout's attitude towards Claimant further deterred her from asking him questions and seeking help. (Claimant's Br. at 6-7.)

[7] Montout denied ever having instructed Claimant to withdraw $11.00 from the member's account. (C.R., Item No. 17 at 35.) Montout explained that he did not instruct Claimant to make the withdrawal because Employer never spoke to the member to verify whether Claimant had in fact overpaid him. (*Id.*)

4

Employer's cash drawer policy, including its provisions subjecting her to potential termination for violations, signed said policy, and admitted to violating said policy. (*Id.* at 34, Emp'r Ex. 3 at 2-3.) Claimant, nonetheless, testified that none of her mistakes were intentional and that she was trying to learn a new job the best she could. (C.R., Item No. 17 at 27.)

Following the evidentiary hearing, the Referee issued a decision and order, dated August 24, 2016, wherein the Referee denied Claimant unemployment compensation benefits under Section 402(e) of the Law. (C.R., Item No. 18.) Claimant appealed to the Board, arguing that Employer failed to show that her mistakes and poor performance, absent intent not to work to her full and proven abilities, rose to the level of willful misconduct. (C.R., Item No. 20.) The Board disagreed and affirmed the Referee's decision. (C.R., Item No. 21.) In so doing, the Board issued its own findings of fact:

1. The claimant was last employed as a full-time member services representative by Sun Federal Credit Union from March 28, 2016, . . . and her last day of work was June 9, 2016.

2. The employer's cash drawer policy provides that a member service representative must notify a manager when they determine that their cash drawer is out of balance. All over/short amounts must be posted the same day after all resources have been exhausted.

3. The claimant received a copy of the cash drawer policy on April 7, 2016.

4. On April 22, 2016, the claimant's cash drawer was short by $10 and the employer reviewed the cash drawer policy with the claimant and the procedures for managing her cash drawer.

5. On May 20, 2016, the claimant's cash drawer was short by $11. The claimant did not notify the branch manager of the shortage and instead force

5

balanced her drawer rather than posting the shortage at the end of that business day.

6. On May 24, 2016, the employer became aware of the $11 shortage during a surprise audit of the claimant's cash drawer.

7. Subsequently, on May 24, 2016, the branch manager asked the claimant if she was aware that her drawer was short on May 20, 2016, and the claimant admitted that she was aware of it and apologized. The branch manager told the claimant that since she had not posted the shortage at the end of the business day on May 20, 2016, she would be receiving a write-up and she would have to settle the cash drawer shortage on May 27, 2016.

8. The claimant believed that she had given a member $11 too much by mistake.

9. On May 27, 2016, the claimant performed a withdrawal of $11.00 from the member's account without the member's permission.

10. The branch manager did not direct the claimant to remove $11.00 from the member's account in order to rectify her drawer shortage of May 20, 2016.

11. On June 9, 2016, the employer discharged the claimant for violation of the employer's cash drawer policy.

(*Id.*)

The Board determined that Claimant's violations of Employer's cash drawer policy constituted willful misconduct under Section 402(e) of the Law. (*Id.*) The Board explained that:

The employer established the existence of its cash drawer policy providing that a member service representative must notify a manager when they determine that their cash drawer is out of balance. All over/short amounts must be posted the same day after all resources have been exhausted. On May 20, 2016, the claimant had an

6

$11 cash drawer shortage which she did not report to management. Instead, the claimant force[] balanced her drawer which was discovered in a surprise cash drawer audit on May 24, 2016.

On May 24, 2016, the claimant admitted to the branch manager that she was aware of the shortage and force balanced her drawer. The branch manager instructed the claimant to balance her cash drawer on May 27, 2016, as she had not posted the $11 shortage at the end of the business day on May 20, 2016. On May 27, 2016, the claimant took $11.00 out of a member's account, without the member's permission, in order to rectify the cash shortage.

The claimant testified that the branch manager told her on May 24, 2016, that all she needed to do to rectify her drawer shortage of May 20, 2016 was to remove $11 from the member's account. The Board does not find the claimant's testimony to be credible.

The branch manager credibly testified that he never instructed the claimant to take $11 from the member's account. Moreover, the claimant has not established that she had permission from the member to withdraw $11.00 from the member's account. The claimant should have posted the $11 shortage at the end of the workday on May 27, 2016 if she was unable to recover it. The Board concludes that the claimant has not established good cause for violating the employer's cash drawer handling policy. Benefits are denied to the claimant under Section 402(e) of the Law.

(*Id.*)

On appeal,[8] Claimant challenges the Board's credibility determinations as to Montout, arguing that Montout lied about being present at

---

[8] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

Claimant's branch office on May 27, 2016. Claimant also argues that the Board erred in concluding that Claimant's mistakes rose to the level of willful misconduct. Finally, Claimant argues that the Board erred in failing to conclude that Claimant had good cause for violating the cash drawer policy when she had previously seen a co-worker handle a short on his/her own without following the cash drawer policy.

As to Claimant's argument challenging the Board's credibility determinations, it is well settled that in unemployment compensation cases, the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1385 (Pa. 1985). In making credibility determinations, the Board "may accept or reject the testimony of any witness, in whole or in part." *Greif v. Unemployment Comp. Bd. of Review*, 450 A.2d 229, 230 (Pa. Cmwlth. 1982). The appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977).

Here, the Board expressly discredited Claimant's testimony that Montout instructed her to remove $11.00 from the member's account. Claimant contends that the Board should have found Montout's testimony to lack credibility because of an alleged inconsistency between a statement contained in her termination notice authored by Montout and a statement contained in an e-mail also authored by Montout. As to the termination notice, it provides, in part, that on "May 27, 2016[, Claimant] arrived to work wearing inappropriate shoes and [was]

8

sent home to change." (Termination notice, attached to Petitioner's Br. as Appendix "A".) Claimant contends that she was not sent home on May 27, 2016, and she points to an email, dated May 26, 2016, in which Montout informed Claimant that he would be out of the office on May 27, 2016. (E-mail dated 5/26/16, attached to Petitioner's Br. as Appendix "B".) Claimant contends that because Montout was not in the office on May 27, 2016, he could not have sent her home on that day for a violation of the dress code. She then contends that Montout lied in the termination letter, and, therefore, the Board should not have found his testimony credible. Claimant essentially asks the Court to overturn the fact finder's credibility determination and reweigh the evidence, which we cannot do.[9] *Peak*, 501 A.2d at 1385. Simply put, as to the crucial fact in dispute—whether Montout instructed Claimant to remove $11.00 from a member's account—the Board found Claimant not credible.

Claimant next argues that the Board erred in concluding that her mistakes rose to the level of willful misconduct. Section 402(e) of the Law provides, in part, that an employee shall be ineligible for compensation for any

---

[9] Furthermore, we observe that the termination notice and e-mail are not necessarily inconsistent, as the termination notice does not indicate that Montout was the individual who sent Claimant home for a violation of the dress code. The alleged inconsistency could have been the result of a typographical error in the termination notice or perhaps circumstances changed and Montout went to the office on May 27, 2016. The explanation for the inconsistency, if it is one, is not contained in the record, as Claimant never questioned Montout about the alleged inconsistency during the hearing and Montout did not testify about it or about specific dates on which Claimant violated the dress code. Moreover, the Board did not rely on the alleged dress code violation when it determined that Claimant engaged in willful misconduct. The Board instead focused on Claimant's violation of Employer's cash drawer policy.

week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." Whether an employee's conduct rises to the level of willful misconduct is a question of law subject to this Court's review. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). The burden of establishing willful misconduct is on the employer. *Id*. at 368-69.

The term "willful misconduct" is not defined by statute. The courts, however, have defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). Where an employer seeks to prove willful misconduct by showing that the claimant violated the employer's rules or policies, the employer must demonstrate (1) the existence of the rule or policy and (2) that the claimant violated it. *Walsh*, 943 A.2d at 369. Moreover, the employer must establish that the claimant's actions were intentional or deliberate. *Tongel v. Unemployment Comp. Bd. of Review*, 501 A.2d 716, 717 (Pa. Cmwlth. 1985). When a claimant knows of a work policy and specifically fails to follow it, such conduct is not excusable negligence, "but is more akin to disobedience of a direct instruction." *Heitczman v. Unemployment Comp. Bd. of Review*, 638 A.2d 461, 464 (Pa. Cmwlth.), *appeal denied*, 648 A.2d 791 (Pa. 1994). There should be no finding of willful misconduct where the claimant can show good cause for the violation—*i.e*.,

10

"that the actions which resulted in the discharge were justifiable and reasonable under the circumstances." *Walsh*, 943 A.2d at 369.

Claimant argues that her violations of the cash drawer policy do not constitute willful misconduct, as they came as the result of her inexperience rather than intentional actions. Claimant's argument tracks a line of "poor work performance" cases holding that mistakes, without a showing that the claimant intentionally failed to work to her full and proven abilities, cannot constitute willful misconduct. *See, e.g., Rung v. Unemployment Comp. Bd. of Review*, 689 A.2d 999 (Pa. Cmwlth.), *appeal denied*, 703 A.2d 468 (Pa. 1997). This line of cases is distinguishable from the matter *sub judice*. In *Rung*, we reversed the Board and granted benefits when the teller failed to adhere to generally accepted teller procedures and did not attempt to conceal or minimize her shorts. *Id.* at 1001-02. The claimant there worked as a head teller for approximately five months, at which time the employer terminated her for various procedural violations. *Id.* at 1000. In one instance, the claimant, rushed from having just returned from her break, exchanged money for a customer that resulted in a $600.00 short. *Id.* The claimant never recovered the $600.00. *Id.* This Court determined that the claimant did not engage in willful misconduct but instead acted carelessly in carrying out her work duties. *Id.* at 1002.

Here, Claimant admitted to violating the cash drawer policy,[10] of which she was aware, when she withdrew $11.00 from a member's account without permission. The Board did not make a finding as to what exactly Montout

_____

[10] Pursuant to Employer's cash drawer policy, a violation of that policy could result in termination of employment. (C.R., Item No. 8.)

11

instructed Claimant to do to cure the May 20, 2016 short, but it did find that Montout did *not* instruct Claimant to withdraw the $11.00.[11] While Claimant testified that she did receive instruction from Montout to withdraw the $11.00, the Board did not find that testimony credible. Claimant testified that Montout instructed her to "post a shortage which I didn't understand." (C.R., Item No. 17 at 26.) Employer, however, previously showed Claimant how to properly handle a short following the April 22, 2016 incident and provided her with five or six coaching sessions on Employer's policies. Claimant did not merely act carelessly in withdrawing the $11.00. She performed the withdrawal intentionally in an attempt to remedy the short. Irrespective of whether Claimant did not understand what "post a shortage" meant, she did not have permission from either a manager or the member in question to make the withdrawal. Claimant's actions, therefore, are inapposite to those we deemed merely negligent in *Rung* and instead exhibit willful misconduct analogous to disobedience of a direct instruction. *See Heitczman*, 638 A.2d at 464. Employer, therefore, met its burden of establishing a *prima facie* case of willful misconduct.[12]

---

[11] Montout testified that Claimant affirmatively disobeyed his instructions for settling the short. (C.R., Item No. 17 at 20.)

[12] We note that the Board made a specific finding that Employer informed Claimant that she would receive a write-up for failing to post the shortage on May 20, 2016. The Board also found that Claimant then withdrew $11.00 from a member's account on May 27, 2016, and Employer terminated her employment on June 9, 2016, for violation of Employer's cash drawer policy. It is unclear whether the Board found that Employer terminated Claimant's employment as a result of her unauthorized withdrawal of $11.00 from a member's account or for her repeated violations of Employer's cash drawer policy, including the unauthorized withdrawal. Regardless, under either scenario, Employer met its burden to establish willful misconduct.

Because Employer established its *prima facie* case of willful misconduct, the burden shifts to Claimant to prove she had good cause for deviating from the policy. In order to prove "good cause," a claimant must demonstrate that her actions were justifiable and reasonable under the circumstances. *Walsh*, 943 A.2d at 369. Claimant argues that she corrected the $11.00 short without seeking approval from her manager because she knew which member she had overpaid and because one of her co-workers previously handled a similar situation on his/her own without regard to the cash drawer policy. We are unconvinced by Claimant's argument. Before the May 20, 2016 short, Claimant force balanced her cash drawer on April 22, 2016. Following that incident, Employer coached Claimant by "review[ing] the cash [drawer] policy and explain[ing] to her the purpose and reason why it's important to balance your drawer." (C.R., Item No. 17 at 6.) Employer also showed Claimant what to do in the event of a short following the April 22, 2016 incident. (*Id.* at 35.) Claimant, therefore, unreasonably deviated from the cash drawer policy on May 20, 2016, given that she had been retrained and instructed to abide by that policy beforehand. We likewise are unconvinced by Claimant's argument that her co-worker's violation of the cash drawer policy excuses her own violation. Nowhere in our jurisprudence has a court of this state recognized such lemming-like behavior as good cause, and we decline to do so today.[13] We, therefore, conclude that

---

[13] We do, however, recognize a defense to willful misconduct when a claimant establishes that an employer treated similarly situated employees differently based upon improper criteria. *Walsh*, 943 A.2d at 370. Claimant raises no such defense. Claimant, instead, argues that Montout instructed her to withdraw funds from the account of the member to whom she made the overpayment. As noted above, the Board found credible Montout's testimony that **(Footnote continued on next page…)**

Claimant failed to meet her burden in establishing good cause for violating Employer's cash drawer policy.

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

_____
**(continued…)**

he never instructed Claimant to make the withdrawal and discredited Claimant's contradictory testimony.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Michele Russello,                         :
                    Petitioner            :
                                          :
          v.                              :     No. 2044 C.D. 2016
                                          :
Unemployment Compensation                 :
Board of Review,                          :
                    Respondent            :

# O R D E R

AND NOW, this 28th day of August, 2017, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge