625 A.2d 622

**Dennis E. MYERS, Appellant,**

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1992.

Resubmitted Feb. 17, 1993.

Decided May 26, 1993.

Alexander W. Banks, Farrell, for appellant.

Clifford Blaze, Chief Counsel, Maribeth Wilt–Seibert, Asst. Counsel, Unemployment Compensation Appeal Bd. of Review, Ernest D. Preate, Jr., Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant Dennis E. Myers appeals from the order of the Commonwealth Court, which affirmed the order of the Unemployment Compensation Board of Review (Board), upholding the referee's denial of benefits. The referee determined that appellant was discharged for willful misconduct and was not entitled to unemployment compensation benefits.

Pursuant to § 402(e) of the Unemployment Compensation Law:

> An employe shall be ineligible for compensation for any week—
>
> (e) In which his unemployment is due to his discharge or temporary suspension from work for *willful misconduct* connected with his work, irrespective of whether or not such work is "employment" as defined in this act....

Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897 *as amended,* 43 P.S. § 802(e) (emphasis added). Thus, appellant herein is eligible for unemployment compensation benefits if his discharge was not due to willful misconduct. Because we find that appellant's discharge was not due to his willful misconduct, we reverse.

From April 24, 1978 until September 6, 1989, appellant was employed by Yourga Trucking, Inc., as an over-the-road truck driver. In the six months prior to his discharge, appellant was involved in three accidents involving his employer's tractor-trailer. These accidents resulted in damages in excess of $14,000 and in appellant's discharge on September 6, 1989.

Appellant applied for unemployment compensation benefits following his discharge, but the Pennsylvania Department of Labor and Industry Office of Employment Security determined that he was ineligible under § 402(e) of the Unemployment Compensation Law. Appellant appealed this determination to the referee. At the referee's hearing, appellant and his employer Marion E. Doutt (employer) testified. In addition, the referee admitted into evidence the police reports of the three accidents. Based on the evidence, the referee determined that appellant's negligence caused all three accidents, and that appellant failed to report the third accident to his employer, in violation of the employer's rules. The referee concluded that: 1) appellant's "continued negligence in operating his employer's vehicle indicates an intentional disregard of the employer's interests and a disregard of [appellant's] duties and obligations to the employer," 2) appellant's conduct rose to the level of willful misconduct contemplated by § 402(e) and 3) appellant was ineligible for unemployment compensation benefits. Appellant appealed to the Unemployment Compensation Board of Review, which affirmed.

Appellant then appealed to the Commonwealth Court arguing that he did not commit willful misconduct and that the referee based her decision on objected to, uncorroborated hearsay. That court determined that, while the police reports were indeed hearsay, they were corroborated by both appellant's and employer's testimony, which in turn supported the referee's findings of fact. That court also held that the admission of the hearsay evidence was not reversible error and affirmed the Board's order.

■ Our scope of review in an appeal from an adjudication of the Board is such that we must affirm unless the adjudication violates the constitutional rights of the appellant, the adjudication is contrary to law, there is a violation of the Board's procedure, or a finding of fact necessary to the decision is not supported by substantial evidence. *Hoffman v. Unemployment Compensation Board of Review*, 524 Pa. 470, 476–78, 574 A.2d 57, 60 (1990). Appellant contends that the evidence is not substantial to support the referee's findings of

fact because the referee relied on incompetent hearsay evidence, i.e., the police reports and the employer's testimony regarding the three accidents.

The Commonwealth Court found and the Board conceded that the police reports constituted objected to hearsay evidence. Nonetheless, that court concluded that the employer's testimony regarding the accidents corroborated the hearsay police reports, and therefore, the police reports were to be given their natural probative effect and could support the referee's findings. *See Palmer v. Unemployment Compensation Board of Review*, 68 Pa.Cmwlth. 388, 449 A.2d 126 (1982) and *Perminter v. Unemployment Compensation Board of Review*, 57 Pa.Cmwlth. 426, 426 A.2d 245 (1981).

The Commonwealth Court, however, ignored the fact that the employer's testimony regarding the accidents was itself objected to hearsay evidence. The employer was not at the scene of any of the accidents and his testimony regarding the accidents was based on what others told him. "[N]othing is more adamantly established in American trial procedure than that no one may testify to what somebody else told him. He may only relate what is within the sphere of his own memory brought to him by the couriers of his own senses." *Johnson v. Peoples Cab Company*, 386 Pa. 513, 515, 126 A.2d 720, 721 (1956). Because the employer had no first hand knowledge of any of the accidents, his testimony regarding the accidents was hearsay. Appellant recognized the hearsay nature of the employer's testimony and objected to it (H.T., 2/2/90, p. 11).

It has long been established in this Commonwealth that hearsay evidence, *properly objected to*, is not competent evidence to support a finding of the Board, whether or not corroborated by other evidence. *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 527–28, 367 A.2d 366, 370 (1976).[1] Therefore, the only competent evidence regarding the accidents was appellant's testimony and handwritten notes, in which he described the events

---

1. However, hearsay evidence, admitted without objection, is given its natural probative effect, if supported by other competent evidence. *Id.* at 527–28, 367 A.2d at 370.

leading to each accident. Our review of this evidence shows that appellant's conduct was not willful misconduct.

This Court, in *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 620, 383 A.2d 533, 535 (1978) (quoting *Moyer Unemployment Compensation Case*, 177 Pa.Super. 72, 74, 110 A.2d 753, 754 (1955)), defined "willful misconduct" as:

> ... an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer. (Emphasis omitted).

Thus, the Commonwealth Court has held that an employee's negligence constitutes willful misconduct only if:

> ... it is of 'such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.'

*Coleman v. Unemployment Compensation Board of Review*, 47 Pa.Cmwlth. 113, 115 407 A.2d 130, 131–32 (1979) (quoting *Harmer v. Unemployment Compensation Case*, 206 Pa.Super. 270, 272, 213 A.2d 221, 223 (1965)). Therefore, it follows that an employer cannot demonstrate willful misconduct by "merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature." *Bucher v. Unemployment Compensation Board of Review*, 76 Pa.Cmwlth. 282, 284–85, 463 A.2d 1241, 1243 (1983).

In the present case, the employer failed to present any competent evidence indicating appellant's intentional disregard of the employer's interest or of appellant's duties to the employer. Appellant's own statements are the only competent evidence regarding the accidents, and they reveal no such intentional and deliberate conduct on his part.

According to appellant's testimony, the first accident, on May 1, 1989, occurred when appellant attempted to make a right-hand turn from a one-lane road, and his truck collided with another vehicle, which was improperly passing on appellant's right (H.T., 2/2/90, p. 23). Appellant testified that prior to attempting the turn he activated his turn signal and checked his mirrors (H.T., 2/2/90, p. 23).

Appellant next testified that on September 4, 1989, he was involved in a second accident when his truck collided with another vehicle while attempting to make a lane change (H.T., 2/2/90, pp. 26–27). Appellant stated that before changing lanes he indicated his intention to change lanes by activating his turn signal, he checked all available mirrors and he checked traffic for other cars (H.T., 2/2/90, p. 26). Only after confirming that there were no vehicles around him did he attempt the lane change (H.T., 2/2/90, p. 26).

Finally, appellant testified that the next day, on September 5, 1989, he was involved in a third accident when his truck rear ended a pickup truck, which in turn collided with another tractor-trailer owned by appellant's employer, Yourga Trucking, Inc. (H.T., 2/2/90, pp. 27–28). Appellant testified that three school buses entering the highway and failing to yield the right of way forced his truck into the left lane, and that there was not sufficient room to stop before impacting with the pickup truck because traffic in the left lane was forced to stop to avoid another, uninvolved vehicle making a left hand turn (H.T., 2/2/90, pp. 27–28).

The evidence fails to show any intentional and deliberate conduct on the part of appellant.[2] This being so, we find that appellant's involvement in the three accidents does not constitute willful misconduct.[3]

2. Even appellant's handwritten statements regarding the accidents do not indicate any intentional and deliberate conduct on the part of appellant. These statements merely reflect appellant's testimony at the hearing, albeit in an imprecise and confusing manner. Therefore, these handwritten statements do not demonstrate appellant's willful misconduct either.

3. In his dissent, Justice Zappala states that "[f]rom Myers's descriptions alone, the referee was presented with sufficient competent evidence to

▮ Likewise, our review of the record reveals no substantially compelling evidence to support a finding that appellant failed properly to report the third accident, thereby committing willful misconduct. The Commonwealth Court found that, in addition to appellant's negligent involvement in the three accidents, his failure to *immediately* report his third accident to his employer constituted grounds for discharge and denial of unemployment compensation benefits. However, the employer's disciplinary policy does not oblige an employee to report an accident *immediately*. Article VII, § I of the employer's disciplinary policy states, in pertinent part, that:

> The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Union affected, except that warning notice need not be given to an employee before discharge if the cause of such discharge is ... *failure to report an*

support his finding that Myers was negligent in the operation of his employer's vehicle." Dissenting Opinion at 629. He then ignores this Court's decision in *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 619–21, 383 A.2d 533, 535 (1978), and instead adopts a Commonwealth Court standard for determining "willful misconduct," stating that:

> Evidence of a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce substantial financial loss to the employer is sufficient to support the conclusion that an employee is guilty of willful misconduct. *Walton v. Unemployment Compensation Board of Review*, 96 Pa.Cmwlth. 472, 508 A.2d 380 (1986); *Coulter v. Unemployment Compensation Board of Review*, 16 Pa.Cmwlth. 462, 332 A.2d 876 (1975).

Dissenting Opinion at 630. Thus, he concludes that appellant's actions constituted willful misconduct, despite the employer's failure to show any intentional conduct by the appellant.

We refuse to adopt this standard because it improperly equates "negligence" and "willful misconduct"—which are not interchangeable. Mere "negligence" does not rise to the level of "willful misconduct" without the additional element of an *intentional* disregard of the employer's interests. *See McLean*, at 619–21, 383 A.2d at 535. Additionally, this standard ignores the fact that the legislature specifically used the term "willful misconduct" in § 402(e) of the Unemployment Compensation Law and not mere "negligence."

*accident which the employee would normally be aware of
. . . .*

(Emphasis added).

Thus, the employer's own rules do not require that an accident be reported immediately to the employer.

Even so, appellant did report the accident immediately after it occurred. He accompanied the driver of the other Yourga (appellant's employer) truck involved in the same accident to a telephone in order to report the accident. The other driver placed the call to make the report, while appellant stood beside him (H.T., 2/2/90, p. 28). The employer admitted at the hearing that the purpose of the phone call was to report the accident, and that he was aware that the appellant was with the other driver when the call was placed (H.T., 2/2/90, pp. 21–22).

Additionally, appellant again reported the accident in person upon his return to his place of employment in Pennsylvania from the scene of the accident in New Jersey. The employer's own testimony reveals that appellant reported the accident in person 12 hours after it occurred (H.T., 2/2/90, p. 12). Thus, the evidence shows that there was no violation—much less a deliberate violation—of the employer's rules so as to constitute willful misconduct as defined in *McLean*, 476 Pa. at 619–21, 383 A.2d at 535.

Accordingly, we reverse the decision of the Commonwealth Court and remand to the Board for computation of benefits.

NIX, C.J., joins this opinion and files a concurring opinion.

ZAPPALA, J., files a dissenting opinion joined by FLAHERTY and CAPPY, JJ.

NIX, Chief Justice, concurring.

I join Mr. Justice Larsen's Opinion of the Court. I write separately to note that there is no issue here of whether this appellant was properly terminated from his position with Yourga Trucking, Inc. If that were at issue, I would not hesitate to uphold the trucking company's termination. The

issue here is whether the Unemployment Compensation Board of Review properly denied his application for unemployment benefits. I agree with Mr. Justice Larsen that the Board improperly denied the grant of benefits to Appellant.

ZAPPALA, Justice, dissenting.

In *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 383 A.2d 533 (1978), we stated that the question of whether an employee's actions constitute willful misconduct is a question of law subject to our review. We applied the definition of willful misconduct articulated by the Superior Court in *Moyer Unemployment Compensation Board of Review*, 177 Pa.Super. 72, 110 A.2d 753 (1955):

"Willful misconduct" . . . has been held to comprehend an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer.

476 Pa. at 620, 383 A.2d at 535 (Citation omitted.)

The evidence introduced by the employer was sufficient to establish negligence of the employee indicating an intentional disregard of the employer's interest and of his duties and obligations to the employer. Therefore, the employee's actions constituted willful misconduct.

During the six-month period preceding his dismissal by Yourga Trucking, Inc., Dennis Myers was involved in three accidents resulting in damages in excess of $14,000.[1] The first of the three accidents occurred on May 1, 1989. The next two

1. The employer had also received a report by the Pennsylvania State Police regarding a fourth accident on July 25, 1989, involving Myers. The hit-and-run accident involved a vehicle that had been hit by a Yourga truck that had drifted backwards. The employer's dispatch records indicated that Myers was the only Yourga driver who was in the vicinity on that date. Myers admitted that he was at the truck stop where the accident occurred on that date, but denied any involvement in the accident. (N.T., 2/2/90, p. 24). The referee concluded Myers was not involved in the accident.

accidents occurred within only twenty-four hours of each other—on September 4, 1989 and September 5, 1989.

Myers contends that the only competent evidence regarding the accidents was his own testimony. Myers overlooks the evidence introduced by his employer consisting of Myers's handwritten statements contained in accident reports prepared by him shortly after each of the accidents. Myers's own handwritten statements and testimony standing alone were sufficient evidence to support the referee's conclusion that Myers was negligent in the operation of his employer's vehicle in the three accidents.

At 7:10 a.m. on May 1, 1989, Myers was involved in an accident at an intersection. In a written report of the accident, prepared for Liberty Mutual Insurance Company, Myers gave the following description of the collision:

> Veh 1 (Myers's vehicle) making rt turn onto Vaxhall Rd from Bennet Rd with turn single (sic) working. (pretrip done at 6 $^{30}$ am same day) Veh. 1 was well into right turn at time of impact. Veh 2 stated he tried to back up. If so how could he be in intersection at time of impact. Veh rechecked at 7 $^{50}$ am by driver to ensure that singles (sic) working.

(R. Item No. 3, p. 51). Myers signed the written form containing the accident description.

Myers's testimony relating to the May 1 intersectional collision follows:

> QCL: Can you describe for us what happened on May 1, 1989?
>
> AC: Yes, I made delivery of a load at Union Steel Corporation, Union, Pennsylvania—New Jersey, I'm sorry. And was told at that time by a dispatcher to return home. So I was leaving to go back over to Interstate 78 by the same routes—street routes that I had taken to go in there. And this was the easiest way in and out of the company. And I was making a right hand turn off of Bennett Road onto Vox Hall (PHONETIC) Road. Now Vox Hall Road and Bennett Road come together at a traffic light and a—

not an 90 degree angle, but a—which would be for me, more than a 90 degree angle turn, a right hand turn. There's no indications on the road. It's (INAUDIBLE) pavement or by signs that there is more than one lane of traffic.

QCL: On which road?

AC: On Bennett Road. The road that I was on. So I stayed to the center of the lane, next to the double yellow line to make it easier for myself to make the right hand turn, beings that I would be turning past the 90 degree angle. I waited for the light to change. I had my turn signals on, indicating I was going to make a right hand turn. At that time, when the light changed, I glanced quickly into the mirror, and into a small door window that's on the right hand side of the truck. There was nobody beside me. I then proceeded to make my right hand turn. Three quarters of the way into the turn, and this is at a point to where the tractor and the trailer are turned at such a point where if look out your mirrors, you cannot see the full length of your unit. You can only see the front part of the trailer. At that time I felt a nudge, so I immediately stopped. I put my four-way—no, I left my right hand turn signal on. I set the parking brakes on the unit. I got down, walked around the unit and a pickup truck had pulled up onto the right hand side of the unit while I was making the right hand turn, and I know that because there was nobody beside me when I started to make the turn. And impact was made by the—what we call the lead axle. The front axle on the trailer, and the right hand—the left hand driver's door of the vehicle.

(N.T. 2/2/90, pp. 22–23).

The second accident occurred on September 4, 1989, at 9:00 p.m. when Myers's vehicle struck an automobile while he was changing lanes. The written accident report prepared for the insurance company and signed by Myers contained his description of the collision:

I was in left center lane on I–8 (61 mile post) turned on right turn single, (sic) checked both mirrors and lower door

window there was no traffic on my right side. I starte (sic) to change lanes to my right at aprox (sic) half way into right lane. I felt the impact of someone hitting the right side of my vehicle. I checked left side of my vehicle and went back into left center lane. then seen (sic) a small white car go into left lane. I then got to the right berm of roadway. the (sic) other driver pulled up behind my vehicle and said that they both were OK, and that his wife was pregant (sic). He called the State Police. After patrolmen arrived, he (driver of car) decided to have wife taken to hosp. (sic) See attached sheet.

White car go accross (sic) in front of my vehicle and go into the far left lane. I then got to the right berm of roadway. The other driver (car) pulled up behind my vehicle and said that they both were OK and that his wife was pragnet. (sic). He called State Police. After Patrolmen arrived, he (driver of car) decided to call amblance (sic) to take his wife to hosp (sic). After leaving there was another car in aprox (sic) the same position along beside my vehicle. And at that location it is very hard to see them at night.

(R. Item No. 3, pp. 55–57). At the hearing, Myers also testified that he could not see the white car beside his truck when he was changing lanes and collided with the car. (N.T. 2/2/90, pp. 29–30).

Only sixteen hours later, Myers was involved in yet another accident. The written accident report prepared and signed by Myers detailed the accident which occurred on September 5, 1989, at 12:35 p.m.:

Phill Stout and I were northbound on State Route 31 (N.J.). After we crossed over I–78 I noticed a red pickup truck comming (sic) up behind us at a very high rate of speed. I told Phil about him on the C.B. At that time I saw 3 school buses getting onto 31 North at an on ramp and that they were not going to yeld (sic) to traffic, forcing Phill to move to left lane to keep from being hit the third bus was forcing me to move over also. By this time the red pick-up had passed me. Another car then came to a complete stop

in front of Phil to make a left turn. Phil got stoped (sic). The red pick-up got stoped aprox (sic) 3 feet from the rear of Phils (sic) truck. I had started brakeing when I seen Phils brake lights. (sic). I was aprox (sic) 100 to 150˙ feet behing Phills truck (sic). I was able to slow down to aprox (sic) 10 mph before impacting the rear of red pick-up. Just before impact the P/U (pick-up) started to go around Phil on left but then pulled back in behind him. The driver of the pick-up told Phil that he had been making real good time before this happened.

(R. Item No. 3, pp. 9–10, 20).

Myers described his rear-end collision at the hearing:

QCL: Now, directing your attention to the next day, can you describe the accident which occurred the next day?

AC: Yes, Phil Stout and I had just loaded at Brotherhills (PHONETIC) Pennsylvania. We were proceeding up Route 31. When we were coming up to Interstate 78 Junction, the road is a two-lane road—one lane northbound and one lane southbound. When you approached an Interchange cross over, the lanes widen out and become two lanes in each direction. Immediately upon going onto the two lane section, a red Ford pickup who was coming up from my rear at a very high speed proceeded to pass me. I picked up the microphone to the CB radio and informed Mr. Stout to be cautious of this pickup where he, in our opinion was exceeding the speed limit. At that time we were approaching an on-ramp from Interstate 78. Three school buses coming off the ramp onto the northbound lanes, failed to yield right of way. The first school bus forced Mr. Stout's unit over to the left lane and the third school bus had forced me over to the left lane. The pick up truck is still making an attempt to pass Mr. Stout on the left in the southbound lanes. Everything was coming to a halt, because the vehicle in front of Mr. Stout decided to stop and make a left hand turn off the center lane. We were all coming to a halt. The pickup truck moved in between Mr. Stout's unit and mine. I was able to slow down to approximately

ten miles per hour before a light impact, hitting the right rear bumper whereas the right front bumper of the pickup truck impacted the left rear of Mr. Stout's truck. (N.T. 2/2/90, pp. 27–28).

Each of the three accidents was described in detail by Myers himself in his written statements and during his testimony. From Myers's descriptions alone, the referee was presented with sufficient competent evidence to support his finding that Myers was negligent in the operation of his employer's vehicle. The referee could fairly conclude that (1) the first accident resulted from Myers's making a right-hand turn from the left lane; (2) the second accident occurred when Myers failed to observe an approaching vehicle and made an improper lane change which caused the collision; and (3) the third accident, a rear-end collision, was caused by Myers's failure to control his vehicle.

Evidence of a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce substantial financial loss to the employer is sufficient to support the conclusion that an employee is guilty of willful misconduct. *Walton v. Unemployment Compensation Board of Review,* 96 Pa.Cmwlth. 472, 508 A.2d 380 (1986); *Coulter v. Unemployment Compensation Board of Review,* 16 Pa. Cmwlth. 462, 332 A.2d 876 (1975). Disregarding the police reports, Myers's own testimony established with sufficient certainty that a series of three accidents occurred within a five-month period, that the accidents resulted in over $14,000 in damages, and that the accidents were attributable to the negligence of Myers. I would affirm the Commonwealth Court's order affirming the order of the Unemployment Compensation Board of Review.

FLAHERTY and CAPPY, JJ., join in this Dissenting Opinion.