Vincent **BAGLIVO,** Petitioner,

v.

## UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 14, 1999.

Decided June 25, 1999.

Joseph C. Ragglia, Philadelphia, for petitioner.

Paul R. Jordan, Harrisburg, for respondent.

Before COLINS, President Judge, FLAHERTY, J., and NARICK, Senior Judge.

COLINS, President Judge.

Vincent Baglivo petitions for review of the order of the Unemployment Compensation Board of Review denying his benefits under Section 402(e) of the Unemployment Compensation Law (willful misconduct).[1]

Baglivo was discharged from his job as a fork lift operator with Chamberlain Corporation for causing damage to equipment and property and for violating work rules. Specifically, Chamberlain discharged Baglivo for damaging an overhead duct and

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937), 2897, *as amended*, 43 P.S. § 802(e).

violation of work rules.[2] Damage to the duct caused an explosion that resulted in an 8–hour power outage to conveyors and machinery and resulted in lost production and approximately $50,000 in loss product. Chamberlain premised Baglivo's termination on a major violation of work rules resulting in danger and loss of property, and on several minor violations related to incompetence and neglect of duty, failure to operate machinery in accordance with instructions, and general violations of safety practices. Baglivo denied having damaged the duct, and based on available information (i.e., the absence of evidence that Baglivo was responsible for the damage), the Job Center approved benefits. Chamberlain appealed that determination.

At hearings before a referee, Baglivo testified on his own behalf. Chamberlain presented the testimony of its director of plant operations, Robert Mitvalsky, and maintenance supervisor, John Malloy. Mr. Mitvalsky testified that Baglivo was the only employee assigned to operate a forklift in the area where the accident occurred. He testified that Chamberlain employees may be cited for major and/or minor violations of work rules, that Baglivo was aware of the rules, that Baglivo had received four previous minor violations in the six-month period preceding the accident, and that his next minor violation would result in termination.[3] Mr. Mitval-

sky testified that following the accident, investigation revealed that the forklift Baglivo was driving at the time of the accident was determined to be the forklift that caused the accident. The investigation relied on evidence that the forklift's back-stop[4] was bent, as if from impact, and bore fresh evidence of electrical arcing damage caused by contact with the high-voltage lines contained in the conduit.

Mr. Malloy testified that within 20 seconds after he heard the explosion he observed Baglivo stepping off the forklift within 20 feet of the accident site. He stated that he confronted Baglivo, who denied that he had hit the duct. Based on the physical evidence of damage to the forklift and Baglivo's proximity to the accident, he opined that he had no doubt that Baglivo had caused the accident by failing to lower the forks and colliding the forklift's back-stop into the conduit. The Board[5] rejected as not credible Baglivo's testimony that he did not drive his forklift into the duct and did not cause the accident. On appeal,[6] Baglivo argues 1) that the Board's necessary findings are not supported by substantial evidence, and 2) that the Board erred in holding that his actions rose to the level of willful misconduct.

As grounds for denial of unemployment compensation, willful misconduct

---

**2.** The overhead duct houses high-voltage electrical cables.

**3.** Chamberlain produced evidence of six previous citations for violation of safety rules, inattention to his duties, incompetence and neglect of his duties, and failure to be at his work position at the required times. For these violations Baglivo received progressive discipline, from verbal and written warnings to three- and five-day suspensions without pay. The citations for minor violations in connection with Baglivo's termination would have warranted termination in accordance with Chamberlain's scheme of progressive disciplinary action. The record indicates that challenges to one or more of these citations for minor violations through grievance procedures remain unresolved.

**4.** Mitvalsky testified that the back-stop is a high cage, located at the rear of the forks, that prevents the load from rolling back in the direction of the driver.

**5.** In this case, the Board made its own findings and conclusions. The Unemployment Compensation Board of Review is the ultimate fact finder in unemployment compensation cases, and when it makes its own findings, it is the Board's findings, and not the referee's, that are subject to review. *Gioia v. Unemployment Compensation Board of Review*, 661 A.2d 34 (Pa.Cmwlth.1995).

**6.** Our review is limited to determining whether necessary findings of fact are supported by substantial evidence and whether the judge committed constitutional violations or errors of law. 2 Pa.C.S. § 704.

is an act of wanton or willful disregard for the employer's interests, a deliberate violation of employer's rules, a disregard of the standards of behavior that the employer has a right to expect of the employee, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer. *Arnold v. Unemployment Compensation Board of Review,* 703 A.2d 582 (Pa.Cmwlth.1997). A claimant's negligence, while warranting discharge, does not necessarily disqualify him from collecting unemployment compensation. *Rung v. Unemployment Compensation Board of Review,* 689 A.2d 999 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 550 Pa. 674, 703 A.2d 468 (1997).

█ An employee's negligence may constitute willful misconduct where the conduct is of such a degree or recurrence as to manifest culpability, or a wanton and substantial disregard for the employer's interests or of the employee's duties and obligations to the employer. *Myers v. Unemployment Compensation Board of Review,* 533 Pa. 373, 625 A.2d 622 (1993). A determination that the employee has engaged in willful misconduct disqualifying the employee from receiving unemployment compensation benefits is especially warranted where the employee has been warned or reprimanded for the same negligent conduct. *Holly v. Unemployment Compensation Board of Review,* 151 Pa. Cmwlth. 450, 617 A.2d 80 (1992), *petition for allowance of appeal denied,* 534 Pa. 643, 626 A.2d 1160 (1993).

█ In this case, the Board's findings are sufficiently supported by the record. The credited testimony of Chamberlain's witnesses constitutes substantial evidence to support the finding that Baglivo drove his forklift, with its back-stop elevated, into the duct, damaging the duct and causing the ensuing explosion. Given the evidence that Baglivo was repeatedly reprimanded for his failure to observe Chamberlain's safety rules and incompetence in the performance of his work duties,[7] Baglivo's negligence is of such a degree or recurrence as to manifest a wanton and substantial disregard for Chamberlain's interests, and of his duties and obligations to Chamberlain. Even though Baglivo's actions were not deliberate, his repeatedly negligent acts rise to the level of willful misconduct. Accordingly, we affirm the order of the Board.

### ORDER

AND NOW, this 25th day of June, 1999, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.

---

7. On April 24, 1998, just three months before the accident in question, Baglivo was reprimanded for smoking a cigarette while operating a propane gas forklift; the reprimand notes that Baglivo had been trained in forklift safety and was aware that smoking is prohibited while operating a propane forklift. (Exhibit 5C.) On April 6, 1998, Baglivo was reprimanded for inattention to his duties and absence from his work post. (Exhibit 5D.) Earlier in 1998, Baglivo was reprimanded for pushing a gate open with his forklift, instead of getting off the forklift and opening the gate manually, and for damaging the roof of tractor trailer with his forklift. (Exhibits 5E and 5F.)