IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Shadowfax Corporation, | : | |
| Petitioner | : | |
| | : | No. 2298 C.D. 2015 |
| v. | : | |
| | : | Submitted: April 22, 2016 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                  FILED: January 4, 2017

The Shadowfax Corporation (Employer) petitions for review of the October 23, 2015 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's determination that Jeanine K. Harris (Claimant) was not ineligible for compensation benefits pursuant to section 402(e) of the Unemployment Compensation Law (Law).[1]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

**Facts and Procedural History**[2]

Claimant worked full-time for Employer as an activities coordinator from January 31, 2012, until her last day of employment on April 10, 2014, and was responsible for supervising individuals with intellectual disabilities.

On April 4, 2014, Claimant and another staff member planned to take eight individuals under Employer's care on a community outing. However, Claimant was advised that she must also bring "Joe," who did not typically go on outings. Claimant and the other staff member left in two vans and, after arriving at the destination approximately forty-five minutes later, Claimant discovered that Joe was missing and immediately called her supervisor and advised her of the same. After performing a search of Employer's facility, Joe was found sleeping in a restroom. Consequently, the incident was reported to the Pennsylvania Department of Public Welfare (DPW),[3] which conducted an investigation. Based on the results of DPW's investigation, Employer determined that Claimant committed an act of neglect in violation of Employer's policy when she left Joe unsupervised and, consequently, Claimant was terminated.

Claimant subsequently applied for unemployment compensation benefits. The local service center found that: Claimant was discharged as a result of her unsatisfactory work performance; Claimant did not work to the best of her ability; Claimant had been warned about her unsatisfactory work performance; and Claimant

---

[2] The factual and procedural history is predominantly based on our recitation in *Shadowfax Corporation v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 2121 C.D. 2014, filed August 4, 2015) (*Shadowfax I*).

[3] The Department of Public Welfare subsequently changed its name to the Department of Human Services, Act of June 13, 1967, P.L. 31, *added by* the Act of September 24, 2014, P.L. 2458, 62 P.S. §103 (effective November 24, 2014).

had not provided a reason for her unsatisfactory work performance. (Reproduced Record (R.R.) at 29a.) Accordingly, the local service center determined that Claimant's actions constituted willful misconduct, rendering her ineligible for benefits pursuant to section 402(e) of the Law. Claimant appealed that determination to a referee, who conducted a hearing on August 14, 2014.

Anna Holland, Employer's program manager, testified that she was Claimant's supervisor and stated that, on April 4, 2014, Claimant and another staff member decided to bring nine residents to the Expo Center at the York Fair. Holland further testified that the mandatory staffing ratio for staff members to residents is one to five. In other words, no single staff member may supervise more than five residents at a time. She explained that Claimant and the other staff member transported the residents to the Expo Center using two Employer vans; the other staff member transported five residents in one van and Claimant transported four residents in the other van. Holland stated that, approximately forty-five minutes later, she received a phone call from Claimant advising her that she had forgotten a resident at Employer's facility and noted that Claimant's first words to her were "oh my God I'm fired." (R.R. at 42a.) Holland further testified that Claimant advised her that she was responsible for leaving the resident behind. (R.R. at 40a-42a.)

Holland stated that, after Claimant's call, Joe was discovered sleeping in a restroom in Employer's facility. She explained that she inquired with Employer's staff to determine Joe's whereabouts during the period that he had been missing and determined that he was last seen exiting the building with staff for the outing. According to Holland, Joe went outside, returned to the facility, and entered the restroom. Holland stated that, after Joe was located, she was required to contact Jamie Plank, Employer's quality assurance coordinator, because Claimant's conduct

constituted a reportable incident. Holland stated that, after Claimant returned from the outing, she had a conversation with Claimant and the other staff member to determine who was responsible for Joe and Claimant confirmed that Joe would have been in her van. (R.R. at 42a-43a.)

Holland stated that supervisors keep performance feedback records on every employee to track an employee's performance. She explained that, on October 2, 2013, Claimant left two residents unsupervised. Similarly, on October 9, 2013, Claimant allowed a resident who must be supervised at all times to go outside alone and unsupervised. Holland further explained that she had a conversation with Claimant about the incident the following day and Claimant advised her that she had no idea why or how the resident ended up outside. Holland also testified that, on December 31, 2013, a resident under Claimant's supervision went to the restroom and never returned. She further testified that the resident eloped and was discovered by a former employee off of Employer's property and that she also spoke with Claimant following this incident. (R.R. at 44a-46a.)

Holland stated that there is no protocol for specific residents to be assigned to a particular staff member. She explained that, if there are two staff members in a room, the staff members are responsible for everyone; in other words, they share responsibility. Holland further stated that the staff members determine which residents go on the outings and explained that Joe has issues with frequently leaving areas to use the restroom and that is the reason why staff members must know his location at all times. (R.R. at 47a-51a.)

Plank testified that Employer is obligated to report an issue like that which occurred on April 4, 2014, to the state and DPW's regulations mandate that Employer perform an investigation of the incident. She explained that Employer has

4

a policy related to abuse and neglect that includes leaving residents unattended, regardless of whether the act was intentional or unintentional. Plank confirmed that Employer's policy includes leaving a resident alone for any period of time without supervision and expressly prohibits staff from leaving residents unsupervised or out of sight for any length of time in accordance with their individualized support plans (ISP). She stated that Employer trains its employees regarding this policy and employees must sign an acknowledgment form to confirm that they have received the policy. Plank also stated that the definition of neglect in Employer's policy is the same definition the DPW uses in its regulations. (R.R. at 52a-54a.)

Plank further testified that she received training from the DPW to be a certified abuse and neglect investigator and must be recertified every three years. She stated that she is a member of Employer's investigation committee, which is responsible for investigating instances of possible neglect. Regarding the investigation of Claimant's conduct, Plank explained that the investigation committee concluded that neglect had occurred because Joe was required to have line-of-sight supervision from staff every fifteen minutes and was left unattended for approximately one hour and fifteen minutes. She testified that, if an allegation of neglect is ultimately confirmed, the employee could be subject to termination and noted that that information is set forth in Employer's policy. Plank stated that the investigation committee's recommendation was to terminate Claimant and explained that the investigation committee considered whether responsibility for Joe's absence could also be attributed to the other staff member. However, she noted that the other staff member was already responsible for five residents, which is the maximum amount per the staffing ratio. (R.R. at 54a-57a.)

Plank further explained that the requirement that Joe be seen every fifteen minutes did not pertain to any particular staff member; rather, he could be seen by any staff member and his supervision requirement would be met. However, she clarified that she had interviewed all staff members regarding Joe's whereabouts and concluded that the last time Joe had been seen before he was found in the restroom was when he was with Claimant and the rest of the group that was leaving for the outing. (R.R. at 57a-58a.)

Claimant testified that she believed she was terminated because, on the day of the outing, she expressed concern to management that bringing Joe on the outing would be problematic because he frequently leaves, without notice, to use the restroom. She noted that she was advised that there was no room for Joe anywhere else and that he must go on the outing. Claimant further testified that, when she called Holland to report that Joe was not with her, she knew that he was in the restroom because he had never gone on outings with the group before. Claimant explained that, in the past, there had always been eight residents in the group; three with Claimant and five with the other staff member. However, she further explained that the residents were not assigned to a specific staff member because everyone shared responsibility for supervising them. Claimant also stated that she had received two bonuses during a three-month period and that she had been used in a book as "the face of [Employer] . . . ." (R.R. at 62a.)

Claimant confirmed that she had disagreed with the directive that Joe must go on the outing, but stated that leaving him behind was not intentional. She also said that the other staff member shared responsibility for Joe's elopement because they were responsible for the same residents. Claimant testified that she did not notice Joe was missing until she arrived at the Expo Center and only discovered

6

how many residents were in the other staff member's van when they returned from the outing to Employer's facility. She explained that she knew how many people were in her van because the same amount of people attended every outing, although she acknowledged that Joe was attending on this particular instance and was left behind. (R.R. at 62a-63a.)

By decision mailed August 19, 2014, the referee determined that Employer failed to meet its burden to establish that Claimant's conduct constituted an intentional and conscious wrongdoing because she committed a negligent act. The referee found Claimant's testimony credible that she committed an inadvertent oversight and that she was not the only party responsible for ensuring that all residents were properly supervised. Accordingly, the referee reversed the local service center's decision and concluded that Claimant was not ineligible for benefits pursuant to section 402(e) of the Law.

Employer filed an appeal to the Board, which affirmed the referee. Employer then appealed to this Court and we vacated the Board's decision and ordered a remand for the Board to "issue findings concerning the previous warnings given to Claimant and the credibility of Employer's witnesses." *Shadowfax I*, slip op. at 6. On remand, the Board determined, in pertinent part:

> Here, the employer maintains a policy prohibiting the neglect of residents, including lack of supervision, and specifically requires that employees follow each resident's ISP. Notably the employer's policy requires progressive discipline for acts of neglect **before** more severe corrective action, such as discharge, is taken. The claimant was aware of the employer's policies. The Board accepts as credible the employer's testimony that on three occasions in 2013 the claimant failed to follow residents' ISPs and/or lost sight of residents. The record shows that the employer spoke with the claimant following at least two of these

7

incidents; however, no testimony or evidence supports a finding that the claimant received any discipline as a result of these incidents or that the claimant was, or should have been, aware that her employment was in jeopardy. In immediately terminating the claimant's employment without progressive discipline, the employer did not follow its own policy.

It is undisputed that somehow Joe was left behind at the employer's facility. However, the employer did not establish that the claimant intentionally, deliberately, or willfully left Joe behind rather than merely believed that he was in the other vehicle.

Board's op. at 3 (emphasis in original). Consequently, the Board again affirmed the referee's decision and Employer filed a timely petition for review to this Court.

On appeal,[4] Employer asserts that the Board erred when it determined that Claimant's conduct did not rise to the level of willful misconduct because her poor work performance following repeated warnings is sufficient to constitute willful misconduct. Employer also argues that Claimant deliberately violated Employer's work rules and failed to establish good cause for the same.

Conversely, the Board argues that Employer failed to meet its burden to establish that Claimant committed willful misconduct. The Board also argues that

---

[4] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015). "In reviewing the record to determine whether there is substantial evidence to support the Board's findings of fact, this court must view the record in a light most favorable to the party which prevailed before the Board, giving that party the benefit of all logical and reasonable inferences deducible from the evidence." *Stringent v. Unemployment Compensation Board of Review*, 703 A.2d 1084, 1087 (Pa. Cmwlth. 1997). If a claimant fails to challenge any specific findings of fact, the Board's findings are conclusive on appeal. *Campbell v. Unemployment Compensation Board of Review*, 694 A.2d 1167, 1169 (Pa. Cmwlth. 1997).

8

Employer failed to follow its progressive discipline policy in terminating Claimant and, therefore, unemployment benefits cannot be denied.

## Discussion

Initially, we note that the employer bears the burden of proving the employee was discharged for willful misconduct. *Sacks v. Unemployment Compensation Board of Review*, 459 A.2d 461, 462 (Pa. Cmwlth. 1983). The Law does not define willful misconduct; however, our Court has defined it as: 1) the wanton or willful disregard of the employer's interests; 2) the deliberate violation of the employer's rules; 3) the disregard of the standards of behavior which an employer can rightfully expect from an employee; and 4) negligence demonstrating an intentional disregard of the employer's interests or the employee's duties and obligations to the employer. *Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436, 439 (Pa. Cmwlth. 2000). Our Supreme Court has stated that "the conduct that rises to the level of willful misconduct may vary depending upon an individual employee's specific occupation or work situation." *Navickas v. Unemployment Compensation Board of Review*, 787 A.2d 284, 288 (Pa. 2001). Whether a claimant's conduct rises to the level of willful misconduct is a question of law subject to this Court's review. *Lee Hospital v. Unemployment Compensation Board of Review*, 589 A.2d 297, 299 (Pa. Cmwlth. 1991).

Generally, mere incompetence, inexperience, or inability to perform a job will not support a finding of willful misconduct. *Scott v. Unemployment Compensation Board of Review*, 36 A.3d 643, 647 (Pa. Cmwlth. 2012). However, "it is well-established that an employee's failure to work up to his or her full, proven ability, especially after multiple warnings regarding poor work performance, must be

9

construed as willful misconduct because such conduct demonstrates an intentional disregard of the employer's interest or the employee's obligations and duties." *Id*. at 648. An employer cannot establish willful misconduct by "merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature." *Myers v. Unemployment Compensation Board of Review*, 625 A.2d 622, 625 (Pa. 1993) (internal quotation omitted).

## Poor Work Performance

Employer argues that the Board erred in determining that Claimant's conduct did not constitute willful misconduct. More specifically, Employer argues that Claimant displayed a decline in job performance during the last six months of her employment because she failed to adequately supervise individuals on four separate occasions. Employer cites this Court's decision in *Scott* for support.

In *Scott*, the claimant worked at a hospital and was responsible for processing trays with instruments and items used by doctors performing surgeries. The employer's policy required all instruments and items to be carefully examined to ensure that they are clean before their next use. On several occasions, the claimant was verbally counseled that he must certify that the instruments and items on the trays were cleaned before they were sent to the operating room for use during surgery. Additionally, the claimant was issued a written warning when trays that he processed contained instruments that still had material from a previous surgery and was warned that any additional infractions would result in further discipline, up to and including termination. Nevertheless, the operating room returned a tray that the claimant had processed because it contained suture material from a previous surgery.

The claimant was suspended for violating the employer's policy, which was ultimately converted to a discharge.

The claimant filed a claim for benefits with the local service center, which determined that he was ineligible for benefits pursuant to section 402(e) of the Law. Claimant appealed that determination to a referee, who affirmed the service center's decision and concluded that the "dirty tray" was not a mistake but, instead, was the result of his failure to diligently perform an important aspect of his job duties. The claimant appealed the referee's decision to the Board, which affirmed the referee. The claimant then appealed to this Court.

On appeal, we noted that the claimant had been repeatedly warned and/or disciplined regarding his poor work performance on at least three occasions. We further noted that, following the last incident, the claimant was advised that any further infractions would result in discipline, up to and including termination. Accordingly, we affirmed the Board and held that "[a]t the very least, Claimant's continued poor work performance demonstrated an intentional disregard of the employer's interest or the employee's obligations and duties." *Id*. at 648.

Employer also relies on this Court's decision in *Sacks* for support. In *Sacks*, the claimant was employed as a cutter of men's suits and was discharged for "a decline in work performance culminating in an incident of miscutting sleeves made of expensive camel hair." *Id*. at 462. On appeal to this Court, we held that the claimant's deliberate violations of the employer's directives and negligence constituted conduct showing intentional and substantial disregard of the employer's interests or of the claimant's duties and obligations. Specifically, we determined that "[t]he many warnings Claimant had been given regarding the poor quality of his

11

work, and his failure to improve after such warnings, reflects on his attitude toward his employment and thus adds to the willfulness of the misconduct." *Id*. at 463.

According to Employer, *Scott* and *Sacks* instruct that Claimant's conduct constituted willful misconduct because her position required her to supervise individuals with intellectual disabilities and, over the last six months of her employment, she failed to adequately supervise individuals on four separate occasions and was provided with at least two verbal counselings after these incidents.

In *Shadowfax I*, we vacated the Board's order and issued a remand for it to "issue findings *concerning the previous warnings* given to Claimant and the credibility of Employer's witnesses." *Id*., slip op. at 6 (emphasis added). On remand, the Board found credible Employer's witnesses' testimony that:

> [O]n three occasions in 2013 the claimant failed to follow residents' ISPs and/or lost sight of residents. The record shows that the employer spoke with the claimant following at least two of these incidents; however, no testimony or evidence supports a finding that the claimant received any discipline as a result of these incidents or that the claimant was, or should have been, aware that her employment was in jeopardy.

Board's op. at 3.

The Board expressly found that Claimant failed to supervise residents on three occasions and Employer "spoke to" Claimant following at least two of these incidents. However, the Board did not find that Employer's conversations with Claimant constituted warnings. It is well settled that the Board is the ultimate fact-finder and is empowered to make determinations regarding evidentiary weight and its findings are binding when supported by substantial evidence, even if the record contains contrary evidence. *Chester Community Charter School v. Unemployment Compensation Board of Review*, 138 A.3d 50, 54 n.3 (Pa. Cmwlth. 2016); *Ryan v.*

*Unemployment Compensation Board of Review*, 547 A.2d 1283, 1286 (Pa. Cmwlth. 1988).

Here, the Board did not find that Employer's conversations with Claimant constituted warnings and the record contains evidence supporting the Board's conclusion that Employer only "spoke to" Claimant following the prior incidents of inadequate supervision. Additionally, the Board found that the prior incidents were not identical to the April 4, 2014 incident because, there, two staff members were responsible for supervising Joe, the staff members used separate vehicles to transport the residents, and Employer had no procedure in place to determine which staff member was responsible for which residents during outing transit. Because the record contains substantial evidence supporting the Board's findings, we are precluded from revisiting the same on appeal, even if the record contains contrary evidence. Consequently, Employer failed to meet its burden to prove that Claimant was discharged for willful misconduct because it failed to establish that it had previously warned Claimant regarding her poor work performance sufficient to demonstrate an intentional disregard of Employer's interests.

**Deliberate Violation of Employer's Work Rule**

Employer also asserts that the Board erred in failing to conclude that Claimant's conduct rose to the level of willful misconduct because Employer established the existence of a reasonable work rule and Claimant's violation of the same. According to Employer, Claimant's failure to establish good cause for her work-rule violation renders her ineligible for benefits.

This Court has stated that:

> An employer alleging willful misconduct bears the burden of proving the existence of a reasonable work rule and its violation. The employer must also show that the employee intentionally or deliberately violated the work rule. An inadvertent or negligent violation of an employer's rule may not constitute willful misconduct. Therefore, a determination of what constitutes willful misconduct requires consideration of all the relevant circumstances.
>
> If an employer meets its initial burden to establish the existence of a reasonable work rule and its deliberate violation, the burden shifts to the claimant to demonstrate good cause for violating the rule. However, where an employer fails to carry its initial burden of proving a deliberate violation, it is unnecessary to consider whether the claimant's conduct constitutes good cause.

*Chester Community*, 138 A.3d at 54-55 (citations omitted).

Here, the record indicates that Employer had no protocol or procedure for determining which residents would go in which staff member's vehicle, nor did Employer have a protocol to account for residents when going on an outing. Moreover, the record contains evidence that Joe was not specifically assigned to Claimant's supervision; rather, Joe was purportedly under the supervision of both Claimant and the other staff member. The Board credited Claimant's testimony that she did not discover which residents were in the other staff member's vehicle until after they returned from the outing. As such, the Board concluded that Claimant's conduct was negligent, not intentional. It is well settled that the Board is the ultimate fact-finder and is empowered to make determinations regarding evidentiary weight and its findings are binding when supported by substantial evidence. *Id*. at 54 n.3. Because the Board's finding that Claimant's conduct was negligent is supported by substantial evidence, we are bound by its determination. Therefore, Employer failed

14

to meet its burden to establish that Claimant deliberately violated its work rule and the burden never shifted to Claimant to establish good cause for violating the same.

Accordingly, the Board's order is affirmed.[5]

_____
PATRICIA A. McCULLOUGH, Judge

_____

[5] Based on the foregoing disposition, we need not address Claimant's argument that Employer failed to follow its disciplinary policy.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Shadowfax Corporation,    :
     Petitioner   :
           :  No. 2298 C.D. 2015
   v.      :
           :
Unemployment Compensation  :
Board of Review,     :
     Respondent  :

## ***ORDER***

AND NOW, this 4th day of January, 2017, the October 23, 2015 order of the Unemployment Compensation Board of Review is affirmed.

             _____
             PATRICIA A. McCULLOUGH, Judge