## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark A. Sangston,              :
          Petitioner        :
                                :
        v.                    :
                                :
Unemployment Compensation    :
Board of Review,                :   No. 1095 C.D. 2023
          Respondent      :   Submitted: September 9, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge

OPINION BY
JUDGE COVEY                                   FILED: October 18, 2024

Mark A. Sangston (Claimant), pro se, petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) August 23, 2023 order affirming the Referee's decision that found Claimant ineligible to receive UC benefits under Section 402(e) of the UC Law (Law).[1] The sole issue before this Court is whether LaFayette Manor Inc. (Employer) met its burden of proving willful misconduct.

Employer employed Claimant as a nurse from May 2015 until January 18, 2022. Employer implemented a requirement for its staff to be vaccinated for COVID-19 or submit a religious exemption request by November 27, 2021. On December 2, 2021, Employer notified staff that a court injunction was issued on all vaccine mandates. On December 17, 2021, Employer notified staff that the court injunction had been lifted and its employees were required to be vaccinated or have

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to willful misconduct).

an exemption approved by January 4, 2022. However, that deadline was extended to January 27, 2022. During his shift on January 17, 2022, Claimant submitted a handwritten request for a religious exemption from the COVID-19 vaccination requirement to Employer.[2] On January 18, 2022, Employer removed Claimant from all future work scheduling. On January 19, 2022, Employer notified Claimant that his religious exemption request was not on the proper Religious Exemption Form (Form) and informed him via text messages that he must submit the proper religious exemption request form by January 27, 2022.[3] Also on January 19, 2022, Employer issued a notice to Claimant placing him on a 30-day administrative leave (Notice). Claimant did not respond to the text messages or provide the required Form. On January 25, 2022, Employer denied Claimant's religious exemption because "[Claimant] did not submit, or even respond to [Employer's] request." Certified Record (C.R.) at 13.

Claimant applied for UC benefits on January 23, 2022. On July 6, 2022, the UC Service Center determined that Claimant was ineligible for UC benefits under Section 402(e) of the Law. Claimant appealed and a Referee held a hearing on August 19, 2022. That same date, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR. On August 25, 2023, the UCBR adopted the Referee's findings of fact and conclusions of law and affirmed the Referee's decision. Claimant appealed to this Court.[4]

Claimant argues that the UCBR erred by finding that he committed willful misconduct because he submitted a timely religious exemption request,

---

[2] Employer did not present Claimant's handwritten request at the Referee hearing.

[3] Claimant testified that he did not receive the text messages. *See* Certified Record at 103.

[4] This Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether the agency's practices or procedures were violated, or whether the findings of fact were supported by substantial evidence. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

which Employer did not submit to the Referee.[5]  The UCBR rejoins that Claimant committed willful misconduct because he did not submit his religious exemption request on the proper form, even after being informed that his handwritten request was not a proper submission.

Initially, Section 402(e) of the Law provides, in relevant part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge . . . from work for willful misconduct *connected with his work*[.]"  43 P.S. § 802(e) (emphasis added).  This Court has explained:

> [W]illful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Pierce-Boyce v. Unemployment Comp. Bd. of Rev.*, 289 A.3d 130, 135 (Pa. Cmwlth. 2022) (quoting *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014)).

> An employer, seeking to prove willful misconduct based on the violation of its policies, must prove the existence of the policy, its reasonableness, and the fact of its violation. *Halloran v. Unemployment Comp. Bd. of Rev.*, 188 A.3d 592, 597 (Pa. Cmwlth. 2018).  Upon doing so, the burden of proof shifts to the employee to prove that he had good

---

[5] Claimant also contends that he did not commit willful misconduct because Employer would not have been fined by the federal government if Employer had permitted him to continue working without a vaccine exemption.  However, the issue of whether Employer would have been fined by the federal government is not relevant to the issue before this Court, i.e., whether Claimant committed willful misconduct.  Claimant further asserts that Employer did not enforce its COVID-19 Health Care Staff Vaccination Policy (COVID-19 Policy) uniformly, although Claimant did not present any evidence, other than his testimony, that Employer's COVID-19 Policy was not uniformly enforced.  Thus, these issues will not be addressed further.

3

cause for his actions. *Id.* The employee can establish good cause where his actions are "justified or reasonable under the circumstances." *Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011).

*Woodring v. Unemployment Comp. Bd. of Rev.*, 284 A.3d 960, 964 (Pa. Cmwlth. 2022). Ultimately, "[t]he question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Scott v. Unemployment Comp. Bd. of Rev.*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014).

Here, Employer's COVID-19 Health Care Staff Vaccination Policy (COVID-19 Policy) stated:

**Policy:**

*Mandatory Vaccination of all Employees, unless an approved medical or religious exemption is granted.* This exemption will be granted following the guidelines set by [the] Centers for Medicare and Medicaid Services (CMS) and the Equal Employe Opportunity Commission (EEOC). This will be accomplished through a facility[-]appointed committee review. The processes for vaccinating, providing exemptions and accommodations for those who are exempt and tracking and documentation of staff vaccinations will be included in this [COVID-19 P]olicy.

Supplemental Record (S.R.) at 18 (italic emphasis added). It further provided:

- For <u>Religious Exemptions</u> there must be:

  o The length of time that employee has held the religious belief underlying the objection.

  o Whether or not your belief is regarding all vaccines or the COVID-19 vaccine.

  o Whether you have received vaccines as an adult against any other diseases.

  o The facility may ask for additional information as needed to determine if employee is legally entitled to an exemption.

4

. . . .

**Attachments:**

- Summary document for Interim Clinical Considerations
- Medical and Religious Exemption forms

S.R. at 19 (all emphasis in original).

The first line of the Form reads: "To request an exemption from [Employer's] [COVID-19 Policy], employees are required to fill out Section One. This Form must be returned to Infection Preventionist, [Employer], as soon as practicable. Section Two will be reserved for [Employer's] use only." S.R. at 21. Section One included three blank spaces for the employee to fill in his name, date, and position. *See id.* That was followed by a lengthy preprinted statement essentially summarizing the COVID-19 Policy and the exemptions thereto, *see* S.R. at 21-22, which was **followed by a blank portion of the page for the employee to handwrite his reasons for the exemption**. *See* S.R. at 22. This was followed by a space for an optional clergy certification. *See id.*

As stated on the Form:

> The purpose of this [F]orm is to start the accommodation process and help to determine whether you may be eligible for a religious exemption. We encourage you to provide as much information as possible to enable [Employer] to evaluate your request. Where there is an objective basis to do so, we may ask you for additional information as needed to determine if you are legally entitled to an [exemption]. Objections to COVID-19 vaccinations that are based on non-religious reasons, including personal preferences or non-religious concerns about the vaccine, do not qualify for a religious [exemption].

S.R. at 21.

It is undisputed that Claimant submitted a handwritten request for a religious exemption to Employer on January 17, 2022. Although Claimant

5

submitted a timely request for a religious exemption, Employer never evaluated the request and never approved or disapproved it before removing Claimant from the work schedule. This Court cannot determine whether Claimant's religious exemption request adhered to the Form because, as Claimant argues, Employer did not present it to the Referee.

In addition to not submitting Claimant's religious exemption request to the Referee, Employer also did not submit its January 19, 2022 Notice to the Referee.[6] *See* C.R. at 104. Moreover, Employer did not submit Employer's notice to Claimant of his employment termination. This evidence is important because, as Claimant asserts, on Employer's Rule Violation Questionnaire (Questionnaire), when asked: "Did the discharge occur because of a rule violation?" Employer answered: "No." C.R. at 31. Similarly, when asked: "Did [Claimant] follow the rule?" Employer responded: "Yes." *Id.* Finally, when asked: "Was the reason for the separation work[ ]related?" Employer replied: "No." C.R. at 32. In *Echbach v. Unemployment Compensation Board of Review*, 855 A.2d 943 (Pa. Cmwlth. 2004), this Court explained:

> The employer [] must present evidence that the employee *deliberately* violated the rule. This [C]ourt has determined that an inadvertent violation of an employer's rule may not constitute willful misconduct. Thus, a determination of what amounts to willful misconduct requires a consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's directives." *Navickas* [*v. Unemployment Comp. Bd. of Rev.*], . . . 787 A.2d 284 [(Pa. 2001)] (quoting *Rebel v. Unemployment Comp*[.] *Bd. of Rev*[.], . . . 723 A.2d 156, 158 ([Pa.] 1998)). **Where the action of the employee is justifiable or reasonable under the circumstances**, **it cannot be considered willful**

---

[6] According to Claimant, although the Notice stated that Employer hoped Claimant would reconsider and get vaccinated, it did not state that his religious exemption request needed to be resubmitted on the Form. *See* C.R. at 104.

**misconduct** because it cannot properly be charged as a willful disregard of the employer's intent or rules or of the standard of conduct which the employer has a right to expect.

*Echbach*, 855 A.2d at 947-48 (bold emphasis added; footnote and citations omitted). Further, "an unintentional, inadvertent violation of an employer's work rule does not generally constitute willful misconduct[.]" *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422, 426 (Pa. 2003); *see also Morysville Body Works, Inc. v. Unemployment Comp. Bd. of Rev.*, 419 A.2d 238, 239 (Pa. Cmwlth. 1980) (quotation marks omitted) ("This Court has indicated that an inadvertent violation of an employer's rule may not constitute willful misconduct."); *MacFarlane v. Unemployment Comp. Bd. of Rev.*, 317 A.2d 324, 326 (Pa. Cmwlth. 1974) ("In all these definitions [of willful misconduct,] there is an element indicating a consciousness of wrongdoing on the part of the employe[e].").

In *Echbach*, the claimant was discharged for violating the employer's absentee policy; however, the claimant did not believe that she had to follow it because she was on leave pursuant to the Family and Medical Leave Act (FMLA).[7]

The *Eschbach* Court concluded:

[T]he employer has the burden of proving that the discharged employee was guilty of willful misconduct. Where [the e]mployer discharged [the c]laimant for failing to report absences that, under the circumstances, [the c]laimant reasonably believed were protected under the FMLA, [the e]mployer has not demonstrated a *conscious wrongdoing* on the part of [the c]laimant. Accordingly, because the UCBR erred in concluding that [the c]laimant's action rose to the level of willful misconduct, we reverse the order of the UCBR denying [UC] benefits to [the c]laimant.

---

[7] 29 U.S.C. §§ 2601; 2611-2620; 2631-2636; 2651-2654.

*Echbach*, 855 A.2d at 950 (emphasis added); *see also Alma Illery Med. Ctr. v. Unemployment Comp. Bd. of Rev.*, 437 A.2d 467, 468 (Pa. Cmwlth. 1981) ("the claimant's behavior lacked the element of *conscious wrongdoing* necessary for a finding of willful misconduct" where "the claimant did not return to work or give notice of being absent because of her belief that the employer would automatically change her vacation date") (emphasis added).

Further, in *Meyers v. Unemployment Compensation Board of Review*, 625 A.2d 622 (Pa. 1993), the Pennsylvania Supreme Court explained:

> [T]he Commonwealth Court has held that an employee's negligence constitutes willful misconduct only if:
>
> > . . . it is of 'such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.'
>
> *Coleman v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 407 A.2d 130, 131-32 ([Pa. Cmwlth.] 1979) (quoting *Harmer v. Unemployment Comp*[.] *Case*, . . . 213 A.2d 221, 223 ([Pa. Super.] 1965)). Therefore, it follows that **an employer cannot demonstrate willful misconduct by "merely showing that an employee committed a negligent act, but instead must present evidence indicating that the conduct was of an intentional and deliberate nature**." *Bucher v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], . . . 463 A.2d 1241, 1243 ([Pa. Cmwlth.] 1983).

*Meyers*, 625 A.2d at 625 (emphasis added).

Here, without knowing what Claimant's submitted religious exemption request stated, this Court cannot determine whether it was reasonable for Claimant to believe that he complied with Employer's COVID-19 Policy. This Court notes that there is a vast difference between simply refusing to submit a document to

8

support an exemption request and submitting a written exemption request. While the former clearly constitutes willful misconduct, the latter does not. Claimant gave timely written notice of his religious exemption request. Based on the Form's stated purpose, i.e., to start the accommodation process and help determine whether an employee may be eligible for a religious exemption, it appears that Claimant provided the required information. Notwithstanding that Employer had notice of Claimant's religious exemption request, Employer fired Claimant for not providing the request on the Form.[8]

Further, the Form only required the name of the requester, his position, the date it was submitted, and the reasons for the request. As his employer, Employer knows Claimant's name, his position, and the date he submitted the request and, presumably, Claimant stated the reasons for his request. It is hard to envision what information was missing simply because Claimant did not use the Form. Because Employer failed to establish that Claimant's non-use of the Form constituted a conscious wrongdoing, it failed to prove Claimant's willful misconduct. Accordingly, this Court must reverse the UCBR's order.

For all of the above reasons, the UCBR's order is reversed.

_____
ANNE E. COVEY, Judge

---

[8] Employer's witness testified that Claimant was fired for violating the COVID-19 Policy, *see* C.R. at 94, despite Employer's representation to the Department of Labor and Industry that Claimant did not violate any policy. *See* C.R. at 31.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Mark A. Sangston, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | No. 1095 C.D. 2023 |
| Respondent | : | |

O R D E R

AND NOW, this 18th day of October, 2024, the Unemployment Compensation Board of Review's August 23, 2023 order is reversed.

_____
ANNE E. COVEY, Judge